## Gannon v. McClannahan.

(Decided July 1, 1924.)

### Appeal from Fayette Circuit Court.

1. Arbitration and Award—Agreement to Arbitrate as to Value of Crop Need Not be in Writing.—Agreement to arbitrate need not be in writing, where it involves value of one-half crop of corn.

2. Arbitration and Award—Presumed that Arbitrators Sworn and Complied with Requirements of Law.—In absence of proof to contrary, it will be presumed that arbitrators were sworn, and that they complied with all requirements of law.

3. Arbitration and Award—Party Knowing of Time and Place of Hearing Not Entitled to Notice.—One cannot complain that he had no notice of hearing before arbitrators, where he knew time and place so well that he was able to have on hand, not only arbitrator he selected, but also his prospective umpire.

4. Arbitration and Award—Where Finding in Favor of Adversary, Award should be Delivered to Successful Party.—Party to agreement to arbitrate was not entitled to copy of award, where finding was in favor of his adversary.

5. Arbitration and Award—Common-Law Right to Submit Controversies to Arbitration Not Repealed.—The common-law right to submit controversies to arbitration is not repealed.

6. Arbitration and Award—Secret Instruction to Arbitrator Selected Immaterial.—It was immaterial that party selecting arbitrator told him that he would not be bound by finding that half of corn crop was worth more than $100.00, where other party and his arbitrator had no knowledge of it.

R. W. KEENON and CARRICK & KEENON for appellant.

D. C. HUNTER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The appellee recovered of the appellant a judgment for $300.00, and appellant appeals. This action was begun by the appellee to recover of the appellant the sum of $300.00 due him by virtue of an award made by arbitrators who were endeavoring to settle the differences between appellant and appellee. In February, 1921, these parties entered into a written contract, under the terms of which appellee was to raise a crop of corn on appellant's land and to operate a dairy for appellant. They modified this agreement a few days after that by an additional writing, and afterwards made further modifications in their contract by parol agreement. This contract was to begin on March 1, 1921, and to continue until March 1, 1922. The parties began to carry out their agreement but differences soon arose, and in September, 1921, their differences had become so great that further agreement was impossible, and they agreed to submit their differences to arbitration. They had settled their accounts arising out of the dairy business twice a month, so that nothing remained to be settled ex-

cept to determine the value of appellee's interest in the corn crop that had been grown on the farm. The appellant selected James Barnes and the appellee selected James McConathy, and it was agreed that the two might select an umpire to act with them. McConathy was a cousin of the appellee, but that fact was known to the appellant before the arbitrators met, and he made no objection on that account. The appellant notified Barnes that he would not abide by any finding of the arbitrators in excess of $100.00, but this fact was not communicated to the appellee or to the arbitrator McConathy. It was agreed that the arbitrators should meet on September 13, 1921. At that time the appellant was sick and unable to be present, but he asked no postponement of the meeting on that account; on the contrary, he directed Barnes to be present at the hearing and also requested a Mr. Tom Coomes to be present and to hold himself in readiness to act as umpire, if necessary. They met as agreed, but without the assistance of Coomes, the other two arbitrators, after reading the contract and inspecting the crop of corn and hearing witnesses, reached the following agreement:

"We, the undersigned, have looked over the corn crop owned equally by T. F. Gannon and V. W. McClanahan, and have set the value of ($300.00) three hundred dollars as a fair price for the 1-2 of said crop.
"Signed,                    "J. S. BARNES,
                            "NEWTON McCONATHY."

As the appellant was sick, he was not told of this finding, but it was communicated to Mr. H. E. Ross, who was then representing him, and afterwards, when the appellant was told of the arbitration, he refused to pay the $300.00 and this suit resulted. Quite a lot of evidence was heard, the weight of which seems to favor the contention of the appellee. The lower court so found and this court has found no error in the record and there is no reason that the finding of the court below should be disturbed.

The appellant complains because the agreement to arbitrate was not in writing, but in Evans v. McKinsey, 16 Ky. 262 (Littell's Selected Cases), this court said: "Nor is it, in general, material whether the submission and award be in writing or by parol. There may possibly be a necessity for the submission and award to be

in writing, wherever writing is required to pass the title to the thing in contest; but in all other controversies, a verbal submission and award, made by the act of the parties and without the intervention of a court, will have the same legal effect as if made in writing.''

In Royse's Admr., etc. v. McCall, 5 Bush 695, the court said: ''A parol submission and award, not involving a controversy about the title to land may be good . . . tested by the principles of the common law.'' Again in 11 Bush 619, Thomasson v. Risk, this court said: ''At the common law any matter in controversy might be submitted by a parol agreement to arbitration, unless the arbitration attempted to divest the parties of some right or title to property that could only pass by a written agreement.''

His next contention is that the arbitrators were not sworn. In the absence of proof to the contrary, it will be presumed that arbitrators were sworn and that they complied with all the requirements of the law. This doctrine is supported by the case of Carson v. Carson, 1 Metcalfe 434..

He next complains that he had no notice of the arbitration and no opportunity to be present and testify; but the proof shows that he knew well the time and place, in fact, he knew it so well that he was able to have on hand not only the arbitrator he had selected, but also his prospective umpire. In Whitlock v. Ledford, 82 Ky. 390, a case very similar to this one, this court said: ''The arbitration was at common law, untrammeled by the provisions of the Code in reference to submission to arbitration under order of a court, and its sufficiency is to be determined by the rules applicable to common law arbitrations. Under such an arbitration a party might waive notice of the meeting of the arbitrators, or having notice of the meeting, might decline to be present, and yet the award would be binding.''

His next complaint is that he did not receive a copy of the award. There was no reason that a copy of the award should be given him, as the finding was in favor of his adversary, and in a common law arbitration the award should be delivered to the successful party, as he is the one who may have need to sue thereon. In Harding v. Wallace, 47 Ky. 536, this court passed upon this identical question and held that the entire failure to deliver a copy of the award could only be ground of contin-

uance. The Kentucky statute does not repeal the common law right to submit controversies to arbitration, and, as a common law award and being in reference to a matter which is not necessary to be in writing, the award is good as a common law arbitration and award. At common law parol awards and submission of controversies by parol to arbitration were good and could be enforced. The statute relative to arbitration and award has not changed the common law rule, but has merely enlarged it and provided a more expeditious and effective method of submitting controversies to arbitration by written agreements so to do, without providing that same shall be void or unenforceable unless they are submitted in writing and the award made in writing. The earliest authorities sustain this view and the later authorities contained in decisions handed down since the enactment of the statute, are declaratory of the principle announced.

The arbitrators were both farmers and knew the value of a corn crop as well without evidence as with it. Doubtlessly, their qualifications were well considered when they were chosen. No fraud or mistake has been shown to exist, and the action of the circuit court in upholding their award is approved.

The judgment is affirmed.