## Miller v. Plumbers Supply Co.

(Decided Nov. 29, 1938.)

O. B. BERTRAM for appellant.

ABEL HARDING and FRANKENBERGER, ABRAHAM & GUTHRIE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment rendered by the Taylor circuit court in favor of appellee, Plumbers Supply Company, in an action brought to enforce an award made pursuant to an arbitration agreement, submitting certain matters of account pending in dispute, for final determination.

The facts out of which this dispute and resulting arbitration arose are as follows: On November 11, 1933, the appellant, James C. Miller, individually, and trading and doing business in the name of James C. Miller Company, made and entered into a contract with the War Department of the United States, whereby he agreed to construct and build six type "A" and five type "B" Field Officers' Quarters at Fort Knox, Kentucky, according to certain plans and specifications made a part thereof.

Before entering into the performance of that contract, it was necessary for Miller to and he did comply with the requirements of Title 4, section 270, U. S. C. A., then in effect, and commonly known as the Heard Act, by executing a bond to the United States, guaranteeing the faithful performance of his contract and also conditioned that the appellant, as general contractor, would

pay the claim of each and every person furnishing material or labor becoming a part of the said awarded building contract, irrespective of whether same was furnished to the general contractor or his subcontractors.

The National Surety Company of New York executed this required bond as surety for appellant upon his being awarded this construction contract.

The appellant, James C. Miller (defendant below), is a resident of Campbellsville, Taylor County, Kentucky, where he has for many years conducted a general contracting business under the name of the James C. Miller Company, engaging principally, it appears, in the execution of contracts had with the U. S. government.

The appellee (plaintiff below), the Plumbers Supply Company, is a Kentucky corporation, having its chief office and place of business in Louisville, Kentucky, and which it appears is principally engaged in selling and distributing plumbing and heating supplies and fixtures at wholesale.

The appellant, having been awarded the aforesaid construction contract, on December 5, 1933, entered into a subcontract with one C. J. Redmon, trading and doing business as the Redmon Heating & Plumbing Company of Louisville, Kentucky, under and by the terms of which Redmon, as subcontractor, was to furnish and install all roughing in materials required for the heating and plumbing work of the aforesaid eleven Field Officers' Quarters at Fort Knox, Kentucky, and duly thereafter entered upon the performance of his subcontract by placing orders with the appellee (Plumbers Supply Company) for the plumbing and heating materials required, per contract specifications, for carrying out his part of the construction work subcontracted for with the appellant.

However, the further circumstance attending Redmon's making of this subcontract may be noted, which is that Redmon, at the same time, had also entered into like subcontracts with other contractors engaged in constructing government buildings at Fort Knox, and other places, under which he was required to render and perform services of the same character and install the like materials as those subcontracted for with appellant. Due to this situation a controversy later arose between the appellant contractor and the appellee, Plumbers Supply Company, as to what part of the heating and

plumbing materials furnished by appellee to Redmon (which he never paid for) had been installed in the eleven Field Officers' Quarters, as subcontracted for with appellant. The Plumbers Supply Company claimed that it had furnished Redmon at Fort Knox with such materials in the amount of some $4,000, which had been installed by him in the eleven Field Officers' Quarters sublet him by appellant, and sought to hold appellant liable therefor under the terms of his contractor's bond which provided that he would pay the claim of each and every person furnishing material or labor becoming a part of such Officers' Quarters.

It further appears that Redmon began the work required by his subcontract with appellant on or about March 6, 1934, and continued at it until about June 7, when becoming involved in financial difficulties, he abandoned the work, which was then taken over and completed by appellant at a cost to him of something over $1,500 in excess of the contract price. On August 3, 1934, Redmon filed a petition in bankruptcy in the U. S. District Court in Louisville, since when he has faded out of the picture, leaving the question of appellant's liability for the amount of his obligation owing the supply company the subject of the pending controversy between the appellant and appellee.

At the time the job was abandoned by Redmon, it appears agreed that all of the roughing in of the heating and plumbing work, subcontracted for with appellant, had been completed.

Shortly following the abandonment of the job by Redmon, the appellee, Plumbers Supply Company, claiming to have furnished him with plumbing and heating materials, which had been used and installed by him in these eleven Field Officers' Quarters, amounting to something over $4,000, made demand on Miller for the payment of Redmon's account, in that appellant, under the terms of his contractor's bond, was liable therefor.

Considerable correspondence followed between appellant and appellee regarding the correctness of the latter's supply account submitted and the extent of appellant's responsibility therefor, and in support of its claim on August 15, 1934, the appellee sent its sale invoices to appellant, purporting to show in detail the items, price and quantity of the materials it had sold and furnished the subcontractor.

Responsive to these demands, on September 17, the appellant wrote appellee, definitely stating that it was not his intention to do anything about the account and refusing to entertain its demand for payment.

Following this, on March 9, 1935, the appellee made written demand on the National Surety Company, the appellant's bondsman, for payment of the claim, evidenced and supported by itemized invoices, at the same time informing the company that the insured had refused to pay the account.

Further correspondence thereupon followed between the National Surety Company and the Plumbers Supply Company and the surety company and its insured, Miller, in which Miller sought to convince his surety that appellee's account was incorrect and that the amount of heating and plumbing materials claimed by appellee to have been furnished Redmon at Fort Knox could not have been used and installed by Redmon only in the buildings covered by his subcontract with appellant at the time he abandoned the work.

It appears that on May 31, 1935, the Plumbers Supply Company, by way of getting an amicable adjustment of its disputed account, suggested to the surety company that each party appoint competent engineers to check the Redmon job and ascertain the quantity and value of materials used and installed in the buildings, in order to convince both Miller and the surety company of the correctness of its account submitted therefor, to which plan the surety it appears agreed and suggested its acceptance by its insured, Miller, who also, it is contended by appellee, agreed thereto.

Pursuant to such agreement it appears that appellee appointed its engineers to make the proposed check and repeatedly attempted to get Miller to appoint his engineers to check upon the Redmon job with them; that three or four definite appointments were made, each of which were later postponed by Miller, who at the same time protested against the appellee's threatened institution of suit against him in the Federal Court, insisting that he would settle out of court the Redmon account on an amicable basis.

Finally it appears that the definite date of December 20, 1935, was fixed by the parties' agreement for the submission of the disputed matter of the account to

arbitrators, equally chosen by each party, for their checking up on the amount and price of the materials which the plumbing company's invoices showed had been delivered at Fort Knox to the subcontractor, Redmon, for his use and installation in the buildings covered by his subcontract. However, the appellant contended that, as the subcontractor, Redmon, was at the same time carrying on several other jobs at Fort Knox and purchasing like materials therefor from the Plumbers Supply Company, the Plumbers Supply Company's invoices for heating and plumbing materials sold and delivered Redmon at Fort Knox would not clearly or fairly show what part thereof he had used in the buildings covered by his subcontract with him (only for which he, the appellant, was liable) and accordingly declined to go through with the submission of the matter for final determination by the arbitrators as to the amount he might, by the invoice checking plan first proposed and agreed upon, be shown to owe the plumbing company. In lieu of this repudiated plan, he proposed that engineers be appointed as arbitrators by each party, who would, under the terms of the arbitration agreement submitted, be directed to disregard all of the plumbing company's invoices of materials sold Redmon, but would ascertain the quantity and total cost of all the roughing in heating and plumbing materials used in the eleven Officers' Field Quarters from the contract plans and specifications, and then ascertain the quantity of all the materials claimed to have been purchased by Miller from sources other than the Plumbers Supply, required to complete the heating and plumbing work, when, he contended, the deduction of the amount of the latter from that of the other would show and determine with binding effect the quantity of materials furnished Redmon by appellee upon the job, the items of which could then be priced by himself or an officer of the supply company to determine the correct amount owing upon its disputed account.

It is appellee's contention that it and the appellant eventually agreed to this plan, upon the condition that the check, when made by the arbitrators under the plan proposed by appellant, would be a final one and that the amount, if any, found by their chosen arbitrators, acting under such terms of submission, owing by appellant to the plumbing company would be final and would represent and be accepted as their award of such amount to

appellee and effect a final settlement of the parties' long pending dispute.

The parties agreeing upon this, on December 20, 1935, the arbitration submission was consummated.

Thereupon, pursuant to such arbitration agreement, arbitrators were appointed, who it appears made a check of the materials furnished, pursuant to the plan upon which the question submitted was to be determined, and found as their award that $2,826.01 was due appellee from appellant. Further, at appellant's request, credit was given upon the award for unused goods returned by Miller to the supply company, amounting to $327.36, leaving the net amount of $2,498.65 awarded as owing and due appellee.

Appellee demanded check for this amount from appellant, and, upon his refusal to pay the amount awarded, instituted this action in the Taylor circuit court, which resulted in a verdict and judgment for appellee in the amount of the award, from which this appeal is prosecuted, seeking its reversal.

The petition set up in substance the facts as hereinabove stated, that the parties had finally reached an agreement to submit for final arbitration the matter, pending in dispute, of the amount owing by appellant to appellee for the plumbing and heating materials furnished to and installed by Redmon in the buildings covered by his subcontract with appellant, and which question only was referred to the arbitrators selected, that they might inquire into, hear evidence upon and determine the matter according to the plan and method set out in their submission agreement, providing that they were to determine:

"1. The amount, character and value of all plumbing and heating materials used in the construction of the said buildings at Fort Knox, Kentucky, and covered by the contract aforesaid.

"2. The amount, character and value of all plumbing and heating materials used in the construction of the said buildings at Fort Knox, Kentucky which were purchased by the Defendant, James C. Miller, from sources other than plaintirf.

"3. The amount, character and value of all plumbing and heating materials used in the construction of said buildings at Fort Knox, Kentucky,

which were furnished by the plaintiff, Plumbers Supply Company.''

Further, the petition alleged that under and pursuant to such agreement and arbitration submission, the arbitrators did inquire into the matters in controversy thus submitted them and on January 15, 1936, rendered their final decision and award as follows: (1) That the amount and value of the heating and plumbing materials used in said buildings at Fort Knox and covered by the subcontract was $4,365.72; (2) that the value of all plumbing and heating materials used in the construction of said buildings at Fort Knox, covered by said contract and purchased by defendant, James C. Miller, from sources other than plaintiff was $1,539.71; and (3) that the value of such materials furnished by the plaintiff, Plumbers Supply Company, and used in the construction of said buildings covered by the contract was $2,826.01, for which amount the supply company prayed judgment.

Answers and amended answers were filed; also an amended petition, motions to strike and demurrers were filed, under which, after the court's passing on same, there was left but one issue or question of fact to be determined by the jury, which was, Was there an agreement made by the parties to submit the matters in dispute to a final and binding arbitration?

At the conclusion of the introduction of the evidence, the defendant (here appellant) moved for a directed verdict in his favor which was refused, while an instruction offered by plaintiff was also refused, when the court in substance instructed the jury that if they believed from the evidence that on December 20, 1935, an agreement was entered into between plaintiff, Plumbers Supply Company, and the defendant, James C. Miller, whereby they agreed to submit to arbitration a dispute then pending between them; that the arbitration agreement was consummated on January 15, 1936, and that the arbitrators, acting thereunder, rendered an award to plaintiff in the sum of $2,826.01, they should find for plaintiff a verdict for such sum, otherwise they should find for defendant. The jury was further instructed that if they should find for plaintiff, they were to allow a credit of $327.36, the amount of materials accepted by plaintiff from defendant as a credit upon plaintiff's claimed award of $2,826.01.

Under the instructions and the evidence heard, a verdict, upon which judgment was accordingly entered, was found for plaintiff in the sum of $2,498.65.

Appellant appeals, seeking a reversal of this judgment, enforcing the award, upon various grounds assigned. He complains of the erroneous admission or rejection of certain evidence upon the trial; of the court's refusal to give the requested directed verdict; of error in the instruction given; that the verdict was contrary to the evidence and the law; and, finally, that the attorney for plaintiff, in his arguments before the jury, when reviewing the evidence, had stated that the plaintiff had the "trade tickets" showing delivery of the material at Fort Knox and would deliver same to defendant any time defendant would give to plaintiff a check for the amount due plaintiff, which statements, he contends, were highly prejudicial to his substantial rights.

Conceding arguendo that there was much irrelevant and incompetent evidence permitted to be introduced or which was really only pertinent to other issues or questions than the one material question or issue joined and submitted upon the pleadings and evidence, which was, whether the parties had entered into an agreement for the final arbitration of their pending dispute upon the plan submitted by them, it is our view that such alleged grounds of error, relating to the introduction of evidence irrelevant to that issue, could not have been prejudicial to the substantial rights of either of the parties, as the same did not affect or influence the jury's determination of this one question, upon which they were instructed to decide the case for or against the appellant.

All the evidence given by the arbitrators alike, whether appointed by the appellant or the appellee, was to the effect that upon the submission of this controversy to them, under the agreement of the parties to arbitrate their dispute, they did check up on the materials furnished by the Plumbers Supply Company to appellant's subcontractor and only listed those which were actually found by them to have been used and called for by the plans and specifications of the buildings in which used, and that the amount of same was some $4,000; also, that they found, as submitted by the second clause or term of the arbitration agreement, that the appellant had bought and installed in the buildings from

dealers other than the Plumbers Supply Company materials for completing the job in the amount of some $1,500; and that, after having ascertained these amounts, as directed by the terms of the arbitration agreement, they deducted the second amount from the first, as was also by the agreement directed, when there was shown to be left a remainder of some $2,400, which, under the terms of the submission of the matter to them, was to be treated by them as and was made their final award of the amount owing the plumbing company.

There being ample evidence supporting the jury's finding that the parties made the alleged agreement to submit to final arbitration the matters in dispute between them, that the arbitrators appointed for hearing the controversy seemingly in good faith carried out the terms of the submission and that an award was made, determining the disputed matters submitted, according to the terms of the submission, we conclude that the verdict of the jury, sustained by ample evidence and returned under proper instructions, should not be disturbed.

We are, for the reasons stated, of the opinion that there was here, as found by the jury, an agreement entered into between the parties for a common law arbitration of the controversy pending between them and that here it is to be said, as was said in the case of Leavenworth & Son v. Kimble, 157 Miss. 462, 128 So. 354, that the parties having submitted their controversy to arbitration, they are presumed to have acted in good faith and must be held to have assented to that which would make their submission of it valid.

As said in 6 C. J. 167, section 27, "the scope of the submission, or the matters submitted to arbitration, is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally," in that agreements to arbitrate are contractual in character and subject to the same rules of construction as other contracts.

The common law right to submit controversies to arbitration has not been repealed. The parol agreement here made between the appellant Miller and the Plumbers Supply Company, that each should select arbitrators to settle the matters in dispute between them and that the arbitrators should select an umpire in case they disagreed, was clearly a valid agreement to arbitrate at

common law, though not conforming with section 451, Civil Code of Practice, or sections 69-73, Kentucky Statutes. The rule as to this is thus stated in Thomasson v. Risk, etc., 74 Ky. 619, 11 Bush 619:

"At the common law any matter of controversy might be submitted by a parol agreement to arbitration, unless the arbitration attempted to divest the parties of some right or title to property that could only pass by written agreement. The object of the statute is not to repeal the common-law rule, but to afford parties, when they see proper to adopt it, a more certain and adequate remedy for the adjustment of controversies. The submission is required to be by order of court or in writing, stating the matters submitted and naming the arbitrators, before the latter can act as a quasi judicial tribunal, clothed with the power to administer oaths and compel the attendance of witnesses. The statute is that parties may submit controversies to arbitration by rule of court, or may make the submission in writing, and no language is to be found in any of its provisions, either expressly or by implication, repealing this common-law right."

See to like effect Modern System Bakery v. Salisbury, 215 Ky. 230, 284 S. W. 994.

As said in Gannon v. McClannahan, 204 Ky. 67, 263 S. W. 770, 771:

"At common law parol awards and submission of controversies by parol to arbitration were good and could be enforced. The statute relative to arbitration and award has not changed the common-law rule, but has merely enlarged it and provided a more expeditious and effective method of submitting controversies to arbitration by written agreement so to do."

Further, in 6 C. J. S., Arbitration and Award, 240, sec. 95, it is said that "an award, ordinarily, concludes and binds the parties as to the merits of all matters, properly within the scope of the award, and intended by the arbitrators to be finally decided" and accordingly, in section 96, page 241, of the same text and volume, it is said that "the general rule is that a valid award operates to merge and extinguish all claims embraced in the submission, so that thereafter the submission and

award furnish the only basis by which the rights and liabilities of the parties can be determined.''

Bearing in mind these principles and rules applicable to common law arbitration, and it here appearing, as found by the jury, that the parties entered into an agreement to submit for final arbitration their dispute for an award, and that after its submission the arbitrators kept clearly within the scope of the matter submitted them for determination and determined same according to the plan proposed by the agreed submission, we are constrained to conclude that their award, having been made under the authority of the provisions of the arbitration agreement, must be taken as having operated to merge and extinguish all claims embraced in the submission, so that thereafter the submission and award furnished the only basis upon which the rights and liabilities of the parties could be determined.

Therefore, the jury having here found that an arbitration agreement was in fact entered into and that, when acting thereunder, the arbitrators made the award in question pursuant to the plan directed by the terms of their agreed submission, thereby finally merging and extinguishing all claims embraced in the submission, appellant cannot complain that the award was directed enforced by the judgment of the court appealed from. Its judgment is therefore affirmed.