305 P.2d 455

Bert FINEG, Appellant,

v.

W. W. PICKRELL, Appellee.

No. 6119.

Supreme Court of Arizona.

Dec. 18, 1956.

Frank E. Flynn, Phoenix, for appellant.

Snell & Wilmer, Phoenix, for appellee.

LA PRADE, Chief Justice.

This is an appeal from a judgment, granted on motion, dismissing the first cause of action as stated in appellant-plaintiff's amended complaint. The essential elements of the first cause of action stated in the amended complaint are as follows:

That the appellant and the appellee were at all times mentioned in the complaint realtor members of the Phoenix Real Estate Board, Inc., hereinafter referred to as the Phoenix Board;

That each executed an individual pledge, pursuant to the by-laws of the Phoenix Board, asserting that he would observe, and therefore be subject to, the articles of incorporation, by-laws, and rules and regulations of both the Phoenix Board and the Arizona Association of Realtors, Inc., as well as the Code of Ethics of the National Association of Real Estate Boards, and its constitution and by-laws;

That the following provisions of the by-laws of the Phoenix Board and the Code of Ethics of the National Association of Real Estate Boards are pertinent and were in effect at all times mentioned in the complaint;

Article 2 of Part 1 of the Code of Ethics:

"The Realtor should so conduct his business as to avoid controversies with his fellow-realtors, but in the event of a controversy between Realtors who are members of the same Real Estate Board, such controversy should be submitted for arbitration in accordance with the regulations of their Board and not to a suit at law, and the decision in such arbitration should be accepted as final and binding."

Article 4 of Part 1 of the Code of Ethics:

"When a Realtor is charged with unethical practice, he should voluntarily place all pertinent facts before the proper tribunal of the Real Estate Board of which he is a member, for investigation and judgment."

Article 5 of the by-laws of the Phoenix Board:

"The Code of Ethics of the National Association of Real Estate Boards is hereby adopted as a part of the Rules and Regulations of the Board, and the Rules and Regulations of the Board shall be deemed to be amended and changed by the National Association of Real Estate Boards. Each Article of the Code of Ethics pertaining to ethical practices shall be interpreted as a mandatory requirement of each Realtor: and the Realtor shall require his salesmen to comply with the provisions of the Code of Ethics."

Section 1 of Article 20 of the by-laws of the Phoenix Board:

"Court of Ethics. There shall be a Court of Ethics composed of nine (9)

members, for the purpose of conducting hearings and recommending penalties for Realtor members who are guilty of violating * * *," any of the provisions which the realtors agreed to observe by signing the pledge.

Section 12 of Article 20 of the by-laws of the Phoenix Board provides in effect that when a realtor is accused of violating any of the provisions he has pledged to observe and his guilt established at a proper hearing, the Court of Ethics may recommend in addition to recommending such restitution to the injured parties deemed equitable, a fine of not less than $25 and not to exceed $300, or a period of probation, or a period of suspension, or a fine and suspension, or expulsion;

That the by-laws of the Phoenix Board also provide that all decisions of the Court of Ethics shall be construed as recommendations and shall be referred to the Board of Directors for ratification, and that when a decision of the Court of Ethics is sustained by the Board of Directors the plaintiff and defendant shall be furnished a written copy of the decision, and they shall be required to abide by such decision as final in all cases of such nature that may not directly concern the National or State Association;

That the appellant pursuant to the provisions of the Code of Ethics and the rules, regulations and by-laws of the Phoenix Board, filed a complaint with said Board, the body of which complaint is in words and figures as follows:

"The Plaintiff herein is a duly qualified Real Estate Broker under the laws of the State of Arizona. This complaint involves the purchase by one C. A. Helsing of the property located on the Southeast corner of Central Avenue and Van Buren, and owned by the Heard Investment Company.

"This complaint is made against W. W. Pickrell and Walter Pocock of Pocock & Smith, Realtors.

"The plaintiff alleges that he was informed by the defendant, W. W. Pickrell that he was acting as realtor for the owner of said property in an effort to secure a sale thereof and that said defendant agreed orally with this plaintiff that if he secured a purchaser for said property at the sale price of Two Hundred Thousand ($200,000.00) Dollars, and that the commission for securing such sale would be divided as follows:

"40 percent to the defendant—60 percent to the plaintiff. That thereafter the plaintiff relying on said understanding with the defendant, W. W. Pickrell, produced the said C. A. Helsing, who was ready, able and willing to purchase said property at the agreed price and on the agreed terms.

"That the defendants well knowing the foregoing facts caused a contract to be executed for the sale of said property to the said C. A. Helsing at the sale price of One Hundred Ninety-Four Thousand ($194,000.00) Dollars. The difference of Six Thousand ($6000.00) Dollars in the sale price and the price for which plaintiff was to sell said property was the amount of commission plaintiff would be entitled to. That the sale of said property, above alleged, was consummated by the defendants without notifying this plaintiff that such sale was being made. That this plaintiff upon learning that this property was being sold by defendants to C. A. Helsing and that the same was in escrow in the Phoenix Title & Trust Company, did on August 28, 1953, notify said Title & Trust Company on behalf of the Lee Ackerman Enterprises and the Title Realty Company, that said plaintiff was entitled to a commission as a broker for producing a purchaser for said sale.

"That the defendants by their action as above set forth, violated the ethics of the Real Estate Board; first, in not notifying the plaintiff of the contemplated sale and second, by accepting as their commission an amount less than the minimum fee as provided by the rules and regulations of the Phoenix Real Estate Board."

followed by a prayer for a hearing;

That a hearing upon the said complaint was had before the Court of Ethics by the Phoenix Board, and that at the hearing appellee and appellant appeared in person and by their counsel, and after hearing the evidence made its findings of fact and rendered its decision and recommendations in writing;

That the findings of fact of the Court of Ethics were to the effect that (1) there was a promise on the part of the appellee to pay the appellant 60% of the commission; (2) there was a sale to Helsing for the sum of $194,000; (3) the appellee received $4,000 as a commission; and (4) the appellee received from Helsing a letter of indemnity for $6,000 for any commission that might have to be paid to anyone later;

That the decision of the Court of Ethics based upon the findings of fact was to the effect that the appellee be directed to pay to the appellant the sum of $6,000 as his share of the 5% commission on a $200,000 sale;

That thereafter the Court of Ethics submitted the findings of fact and recommendations to the Board, which sustained the findings and recommendations;

That the findings of fact and decision of the Court of Ethics became final and

binding upon the parties and that, as a consequence, the appellee was indebted to the appellant in the sum of $6,000. The prayer demanded judgment against appellee for $6,000.

The only question presented by this appeal is whether the allegations of the first cause of action in substance set forth above, state a claim upon which relief could be granted.

The test to be applied in resolving this question is whether in a light most favorable to the appellant, with every intendment regarded in his favor, the complaint is sufficient to constitute a valid claim. 1 Fed.Prac. & Proc., Rules Ed., Sec. 356, by Barron & Holtzoff; Garbutt v. Blanding Mines Co., 10 Cir., 141 F.2d 679; United States v. Thurston County, Neb., D.C., 54 F.Supp. 201. In applying this test all facts well pleaded must be accepted as true. Snyder v. Betsch, 56 Ariz. 508, 109 P.2d 613.

Appellant founds his claim upon his belief that a valid arbitration award was entered by a board of arbitrators (Court of Ethics) whom he asserts had authority under an agreement to determine the alleged property rights of the parties.

Sections 27–301 through 27–311, A.C.A.1939, Sections 12–1501 through 12–1511, A.R.S.1956, pertain to arbitration. There is no allegation in the complaint indicating that these statutes were complied with in the conduct of the arbitration in issue here. We therefore conclude that they are without application in resolving the question before us. We feel, however, that these statutes were not intended to provide a means of arbitration exclusive of those modes sanctioned under the common law. 6 C.J.S., Arbitration and Award, § 2; Gates v. Arizona Brewing Co., 54 Ariz. 266, 95 P.2d 49; Utah Const. Co. v. Western Pac. Ry. Co., 174 Cal. 156, 162 P. 631; Gannon v. McClannahan, 204 Ky. 67, 263 S.W. 770. It necessarily follows that the validity of the award relied upon by the appellant must be founded upon common law principles.

It is a well-settled rule of the common law that a general agreement, in or collateral to a contract, to submit all disputes which may thereafter arise to arbitration, is invalid and unenforceable as an attempt to oust the legally constituted courts of jurisdiction. Gates v. Arizona Brewing Co., supra; 3 Am.Jur., Arbitration and Award, Section 31; J. T. Williams & Bro. v. Branning Mfg. Co., 154 N.C. 205, 70 S.E. 290. However, once such agreement to submit is executed by the parties and is carried out to a just and final award such will not be considered invalid by the mere fact that the original agreement provides for arbitration of all disputes which may arise. 3 Am.Jur., Arbitration and Award, Section 30; Restatement of Contracts, 550

(a); Florida Athletic Club v. Hope Lumber Co., 18 Tex.Civ. 161, 44 S.W. 10; J. T. Williams & Bro. v. Branning Mfg. Co., supra. But in 3 Am.Jur., Arbitration and Award, Section 25, it is recited that

" * * * Where a controversy arises within the scope of a general agreement to submit * * * disputes to arbitration, and is submitted to arbitrators pursuant thereto, if no new agreement embodying all the essentials of a valid submission has been made, such essentials as are lacking in the submission agreement must be present in the original agreement." (Cases cited.)

■ One of the essentials of a valid submission is that it set out the subject matter of the dispute in such a manner as to leave no reasonable doubt as to what was intended to be submitted to arbitration. Cracchiolo v. Carlucci, 62 Ariz. 284, 157 P.2d 352; 6 C.J.S., Arbitration & Award, § 20.

■ We have carefully examined the complaint which appellant submitted to the Court of Ethics. This complaint includes a statement of matters which transpired between the parties, and an allegation that as a result of such conduct the appellee was guilty of violating the ethics of the Phoenix Board in certain specified particulars, and concludes by making a request for hearing. It appears that the complaint was intended to be no more than a request to have the ethical violations allegedly resulting from the transaction between the parties resolved. It includes no suggestion apparent to us that any determination of property rights was contemplated. We therefore conclude that as far as conferring authority to resolve property rights is concerned, the complaint filed with the Court of Ethics, standing by itself, fails to satisfy the essential element of reasonable certainty required of every submission.

Therefore, if the submission by its terms is to be found to satisfy the essential element of reasonable certainty as far as an intention to submit the alleged property rights of the parties is concerned, it must be gleaned from the original agreement, for the proceedings of the Court of Ethics were allegedly conducted pursuant to the provisions of this agreement. The original agreement referred to allegedly arose from the execution of pledges by realtor members of the Phoenix Board. It is alleged that these pledges incorporated by reference, among other things, the by-laws of the Phoenix Board as well as the Code of Ethics of the National Association of Real Estate Boards, and that each pledgee promised in signing the pledge to observe, and therefore be subject to, these provisions.

It is apparent after studying these incorporated provisions that if the Court of Ethics possessed any authority to resolve the property rights in question here such authority must have been derived from Sec-

tion 1, Article 20, of the by-laws of the Phoenix Board. This section provides in effect that when the Court of Ethics determined that a realtor is guilty of violating any of the provisions he has promised to observe the Court may recommend such "restitution" to the injured parties as it deems equitable, in addition to specified disciplinary sanctions. "Restitution" as used in the Restatement of that subject is defined as

"* * * restoring to a person property transferred by him to another or property of his acquired by another, or paying to him the value of services rendered by him. It implies both a loss by him and a receipt of something by another, * * *."

The word, therefore, appears to mean a restoration of something received by another. We find nothing in the appellant's complaint which indicates that appellee has received anything which could be subject to restoration within the ordinary legal meaning of the term "restitution". We do not believe that the term "restitution" as used in Section 1, Article 20, supra, was intended to extend the jurisdiction of the Court of Ethics to authorize it to determine property rights such as are presented by the case before us. We are convinced that as far as such property rights are concerned, the term, as therein used, is too indefinite to satisfy the element of reasonable certainty, essential to every submission.

While we do not wish to discourage the use of arbitration as a means of settling disputes it is clear that both law and reason support the view that matters submitted must be included in the submission agreement with reasonable certainty, and here the matter of property rights was not so included. We, therefore, rule as a matter of law that the Court of Ethics was without authority to resolve the property rights involved in this case. To rule otherwise would open the door to using agreements to arbitrate with subtle provisions as a vehicle of deception which could work to deprive an innocent and unwitting party of his day in court, thus perverting this otherwise commendable means of settling controversies. As a consequence of this want of authority it is evident that no valid arbitration award could be established under the allegations set forth in the first cause of action included in the appellant's amended complaint.

The judgment of dismissal is affirmed.

UDALL, BINDES, and STRUCKMEYER, JJ., concurring.

PHELPS, Justice (dissenting).

I am of the view that the judgment of the lower court dismissing plaintiff's first cause of action should be reversed.

It seems perfectly clear to me that the members of the Phoenix Real Estate Board,

including plaintiff and defendant, who were all subject to all rules, regulations and by-laws of said Board, and having signed pledges to observe the Articles of Incorporation, by-laws and rules and regulations of both the Phoenix Real Estate Board and the Arizona Association of Realtors, Inc., and the Code of Ethics of the National Association of the Real Estate Boards and its constitution and by-laws are as firmly bound by said pledges as if the terms thereof appeared above their signatures in a written contract to do the things therein prescribed. Pacaud v. Waite, 218 Ill. 138, 75 N.E. 779, 2 L.R.A.,N.S., 672.

It is provided in the Code of Ethics of the National Association of Real Estate Boards that:

" * * * Each Article of the Code of Ethics pertaining to ethical practices shall be interpreted as a mandatory requirement of each Realtor: and the Realtor shall re-require his salesmen to comply with the provisions of the Code of Ethics".

In the complaint filed before the Court of Ethics established by the Phoenix Realty Board, according to its By-Laws, that court was informed by the complaint of the alleged breach of the Code of Ethics by defendant as set up in said complaint and proceeded to a hearing thereof according to the provisions of the By-Laws.

Article 2, Part 1 of the Code of Ethics of the National Association of Real Estate Boards provides that:

"The Realtor should so conduct his business as to avoid controversies with his fellow-realtors, but in the event of a controversy between Realtors who are members of the same Real Estate Board, such controversy *should be submitted for arbitration* in accordance with the regulations of their Board *and not to a suit at law,* and the decision in such arbitration should be accepted as final and binding." (Emphasis supplied.)

Article 20, Section 12 of the By-Laws of the Phoenix Real Estate Board provides in substance, that when a realtor is accused of violating any of the provisions he had pledged himself to observe and his guilt is established, the Court of Ethics may recommend, *in addition to recommending such restitution to injured parties deemed equitable,* fines (or other specified penal sanctions) of not less than $25 nor more than $300. (Emphasis supplied.)

After due hearing in the matter, the Court of Ethics recommended that defendant be directed to pay to plaintiff, in accordance with the agreement between plaintiff and defendant, the sum of $6000 as and for 60% of a 5% commission upon the sale of a parcel of property defendant had for sale at a price of $200,000. This

recommendation was affirmed by the Phoenix Real Estate Board and under the by-laws became a valid award. Defendant had agreed with plaintiff to pay 60% of the commission if he found a purchaser for said property. Plaintiff produced the purchaser and defendant allegedly sold the property to him for $194,000, collected $4,000 commission for himself, took a Bond of Indemnity from the purchaser for $6,000, in event he had to pay plaintiff that amount, and refused to pay plaintiff that or any other sum as and for his commission.

These facts were alleged, in substance, in the first count in the complaint which was dismissed by the trial court upon the ground that it failed to state a claim against defendant.

If I am correct in the conclusion above stated, that there existed in the pledge of members of the Board, an agreement to observe the Code of Ethics of the National Association of Real Estate Boards and, the Constitution and By-Laws of the local and state real estate boards, this would constitute a binding contract between plaintiff and defendant, and the lower court committed reversible error in entering judgment dismissing the first count of plaintiff's complaint.

I agree first, that under the common law, an agreement to arbitrate matters to the exclusion of the jurisdiction of regularly constituted courts to determine such matters, is null and void in the absence of the completion of the arbitration in which both parties participated, and secondly, I agree that the arbitration set up in plaintiff's complaint cannot be considered as a statutory arbitration under the Arizona Statutes on Arbitration, for the reason that no attempt was made to comply with a statutory arbitration.

But the records in this case do indicate a completely executed agreement for a common law arbitration of the matter before the constituted authorities of the real estate Board of Phoenix. They show that a hearing was held before the Court of Ethics and then presented to the Board of Directors of the real estate Board who affirmed the findings and recommendation of the Court of Ethics. Under the rules, regulations and by-laws of the Phoenix Real Estate Board it then became a valid award upon which to present the action alleged in Count I of the complaint filed in the lower court.

Vol. 3 of American Jurisprudence, Arbitration and Award, Sec. 30, on this subject is as follows:

"Executed agreements.—If nothing in the terms of an arbitration agreement contravenes public policy in other respects, it is the universal rule that however comprehensive it may be, the mere fact that it provides for arbitration of disputes which may arise in the

future will not, when once it has been executed,—that is, fully carried out by the parties and a final, certain, complete, and honest award made by the arbitration upon all matters submitted, pursuant to the terms of the submission,—be ground for holding it invalid; it will then effectually bind the parties in the absence, of course, of some ground for impeaching the award."

Citing many cases including Oskaloosa Sav. Bank v. Mahaska County State Bank, 205 Iowa 1351, 219 N.W. 530, 533, 60 A.L.R. 1204, in which the court recognized the invalidity of an unexecuted common law agreement of arbitration to the exclusion of duly constituted courts, the court said the cases so holding:

"* * * were bottomed on the right of a party to such contract to revoke it at any time before decision had been reached or award made. We have found none of our cases, nor any from our sister states, holding that, where a matter of this character has been submitted and final determination made by the person specified in the contract, one can then revoke such agreement. In other words, this court has always held that where a matter has been submitted and finally disposed of by the proper party, all parties are bound thereby." (Citing cases.)

The agreement to arbitrate was fully executed in the instant case and all matters agreed to be arbitrated were submitted to and passed upon by the arbitrators and there was nothing in the agreement contravening public policy. Therefore, the parties are bound by it.

I do not agree with the majority opinion to the effect that the complaint before the Court of Ethics indicates to them that the plaintiff sought nothing more than to have defendant disciplined. Plaintiff sets forth in his complaint that he was entitled to 60% of a 5% commission on the sale of a property, the sale price of which was fixed by defendant at $200,000, and that he had notified the escrow agent he was entitled to $6,000 commission on the sale. Defendant evidently thought, or at least feared, plaintiff could probably recover a commission from him in the sum of $6,000, otherwise, he would not have exacted a Bond of Indemnity in that amount from the purchaser.

As pointed out by counsel for plaintiff, pleadings before a non-judicial body are not expected or required to be drawn with the nicety and technical precision required in courts of law. It is true the prayer of the complaint before the Court of Ethics does not expressly ask for an award of $6,000 commission; neither does it ask for punitive discipline to be meted out to defendant. All the facts necessary for the

Court of Ethics to make such recommendation as it deemed equitable or proper were substantially incorporated in that complaint. The language of Article 20, Section 12 of the by-laws of the Phoenix Realty Board provide that when the Court of Ethics has found a realtor guilty of violating any of the provisions he has pledged to observe it may *recommend in addition to recommending such restitution to the injured parties deemed equitable,* fines (or other specified penal sanctions) of not less than $25 nor more than $300.

This clearly indicates to me that it is intended the primary consideration of the Court of Ethics is the awarding to plaintiff of the commission due him from defendant and that penal sanctions or disciplinary action of any kind is of secondary consideration. The language employed in my opinion, compels this construction because it clearly states that any disciplinary action recommended by it *is in addition to recommending restitution.*

It is further my view that the definition of restitution in equity has a much broader meaning than ascribed to it in the majority opinion. Unless it is given a broader interpretation its efficacy is rendered practically nugatory for the reason that it is difficult to envision in this type of case a fact situation where the word "restitution" would be applicable.

In 77 C.J.S., Restitution, it is said at page 323:

" * * * but in modern usage restitution may go beyond the act of returning the thing taken, and, in its broad sense, is not confined to the return of something of which one had been deprived, but includes compensation for loss, damage, or injury done to another." Citing Basile v. U. S., D.C.Mun.App., 38 A.2d 620, 622.

See, also, State v. Barnett, 110 Vt. 221, 3 A.2d 521, 525; Lauffer v. Vial, 153 Pa. Super. 342, 33 A.2d 777, 779.

In the instant case, according to the award of the Court of Ethics as affirmed by the Phoenix Real Estate Board, defendant was unjustly enriched, at least to the extent of $4000 which he collected as a result of plaintiff's efforts and under his agreement with plaintiff, the defendant was not in justice entitled to retain this commission until he paid plaintiff the sum of $6,000 for his services.

And it is my further view that so long as he holds the Bond of Indemnity and refuses to pay plaintiff the sum of $6,000 awarded by the Court of Ethics and the Phoenix Real Estate Board, and at the same time retains the $4,000 collected by him as commission based upon plaintiff's efforts, he should be compelled to faithfully perform his part of his agreement with plaintiff.

The judgment of the trial court in dismissing Count I of the complaint should be reversed.