434 P.2d 529

David K. FUNK, Arthur L. Funk and Albert C. Funk, Appellants and Cross-Appellees,

v.

Charles John FUNK, Appellee and Cross-Appellant.

No. I CA–CIV I22.

Court of Appeals of Arizona.

Dec. 4, 1967.

Rehearing Denied Jan. 5, 1968.

Review Denied Feb. 20, 1968.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by John H. Killingsworth, Phoenix, for appellants and cross-appellees.

Alan P. Bayham, Phoenix, for appellee and cross-appellant.

HATHAWAY, Chief Judge.

This is an appeal by David K. Funk, Arthur L. Funk and Albert C. Funk, defendants below, and a cross appeal by Charles John Funk. The appeal is taken from the October 28, 1964, judgment of the superior court of Maricopa County modifying an award and judgment thereon of a selected board of arbitration which, according to the partnership agreement of the parties, was to set a value on the partnership assets of Charles John Funk.

On September 12, 1957, David K. Funk, Arthur L. Funk and Albert C. Funk, appellants, and Charles John Funk, appellee,

**528**

entered into a partnership agreement providing for a partnership to be known as the Western Greyhound Racing Circuit. The execution of this partnership agreement arose out of prior litigation between Maurice O. Funk and Bernard J. Funk against David K. Funk and Arthur L. Funk, individually and as executor of the estate of Benjamin A. Funk, deceased. This action was dismissed with prejudice on October 23, 1957. The consideration for the dismissal was the execution by the two appellants, David and Arthur Funk, of certain Bills of Sale and the creation of the partnership. As a result of this arrangement, the appellee was voluntarily brought into Greyhound Parks of Arizona, Inc., and Washington Land Company by transferring to him shares of stock owned by Arthur and David Funk. In addition, appellee received debenture bonds of Greyhound Parks of Arizona, Inc., which were owned by Arthur and David Funk. These stocks and bonds were transferred under the Bills of Sale above mentioned. All of the foregoing corporations were to be owned and operated by Western Greyhound Racing Circuit, the newly organized partnership.

The partnership agreement provided that in the event of dissolution the withdrawing partner must offer his interest in the partnership for sale to the remaining partners who promised to purchase such interest. It further provided:

"23. It is further understood and agreed between the parties hereto that each of said parties do hereby waive and relinquish any rights they may have or hereafter acquire for the filing of a lawsuit against any of the remaining partners. Should any difference of opinion, money or anything of value arise that cannot be settled by agreement between the partners, then said partners shall agree to each appoint an arbitrator and both arbitrators shall appoint a third arbitrator who will render a decision on the dispute and said decision shall be binding upon all partners hereto. The clause of waiving the right to sue shall not apply if the basis of the cause of action or lawsuit is upon fraudulent acts of one of the partners. 'Fraudulent act' is defined to mean not only dishonest, but also in the normal, legal definition of the word 'fraud'."

Disputes arose among the partners and as a result thereof appellee filed suit on August 11, 1961, praying, in the alternative, that the defendants should be ordered to show cause "why they should not be required to arbitrate in the manner provided in said partnership agreement," or that the defendants shall be ordered to show cause "why the court should not appoint an arbitrator and appraiser to act with plaintiff's arbitrator and appraiser * * * to fix the value in sales price of Charles John Funk's" interest in both the partnership and the stocks and debenture bonds of the related business activities in which the appellee was one-quarter owner with the appellants.

Prior to trial, however, both sides agreed to abide by the partnership agreement and to appoint appraisers and arbitrators to dispose of the disputes. At the outset of the arbitration proceedings a long and trying discussion arose among the partners as to what was to be the subject matter of the arbitration. This discussion centered around the issue of whether the stock and bond interest of the appellee would be subject to the arbitration. After much further discussion on this matter the partners entered into the following stipulation of September 17, 1962:

"It is stipulated that evidence shall be produced before the arbitrators; that upon a majority of the arbitrators submitting a written award, such award shall be filed in Charles John Funk, plaintiff, v. David K. Funk, Arthur L. Funk, and Albert C. Funk, defendants, No. 129497 in the Superior Court of the State of Arizona in and for the County of Maricopa and shall have the same force and effect as though entered by a judge of said Superior Court; said judgment shall be signed by a Superior Court judge and

all parties hereto waive their right to a new trial or appeal to any court."

Thereafter, evidence on all the matters prayed for in the appellee's complaint, including the value of the stocks and bonds, was introduced before the board. The board's award was entered and filed in the superior court of Maricopa County. The appellee moved to vacate or modify the award on August 1, 1963, which motion the superior court granted and entered its judgment[1] modifying the arbitrators' award, as above stated, on October 28, 1964.

■ The single issue presented by the appellants is whether it was error, in the absence of a showing of fraud, for the trial court to modify the arbitration agreement in the light of the foregoing partnership agreement and the stipulation of September 17, 1962.

■ This not being a statutory arbitration under A.R.S. § 12–1501 through § 12–1511, it necessarily follows that the validity or invalidity of the award must be founded upon common law principles. Fineg v. Pickrell, 81 Ariz. 313, 305 P.2d 455 (1956).

■ It is well settled under the common law that an agreement to submit all disputes which may arise to arbitration cannot oust the court of jurisdiction. Gates v. Arizona Brewing, 54 Ariz. 266, 95 P.2d 49 (1939).

"However, once such agreement to submit is executed by the parties and is carried out to a just and final award such will not be considered invalid by the mere fact that the original agreement provides for arbitration of all disputes which may arise. [citations omitted]" 81 Ariz. at 318, 305 P.2d at 458.

However, our Supreme Court in the *Fineg* case went on to say that one of the essentials of a valid arbitration award is that the subject matter of the dispute must be submitted to the board in such a manner as to leave "no reasonable doubt" as to what was intended to be submitted to arbitration. Fineg v. Pickrell, supra at 319, 305 P.2d 455.

In determining what the subject matter before the arbitration board consisted of we must not only consider the stipulation of September 17, 1962, but also the long discussions entered into by the parties and their attorneys which took place at the commencement of the arbitration proceedings and from which, as a consequence thereof, the above stipulation sprang. In that discussion the following exchanges took place:

"MR. BAYHAM [Appellee's attorney]: I will be willing to sign any agreement executed jointly by myself and Mr. Primock [appellants' attorney] to the effect we will abide by the decisions of the arbitrators in connection with this arbitration, and if you decide an asset is a partnership asset, that is it, it is a partnership asset. On the other side, if you decide it isn't a partnership asset, he has to agree it is not a partnership asset, it is a two-edged sword.

MR. PRIMOCK [Appellants' attorney]: I will abide by your decision. * * * We were under the opinion that the arbitration was to determine what was in the lawsuit [that litigation begun by the appellee to force dissolution], the value to give John what he prayed for in the lawsuit, plus the co-partnership agreement and plus the December 21 letter they signed. If you find under this agreement he doesn't have to sell it [the stocks and debenture bonds received by the appellee under the bills of sale], we will abide by it. * * *

MR. SULLIVAN [One of the arbitrators]: What do you care whether it is in debentures or into bucks.

---

1. "That the majority award of the arbitrators is hereby modified by striking therefrom the consideration of the individual as distinguished from partnership property of CHARLES JOHN FUNK consisting of the stocks in Greyhound Parks of Arizona, Inc., Washington Land Company, Inc., and bonds of Greyhound Parks of Arizona, Inc.

"That the majority award in all other respects is confirmed."

**530**

CHARLES JOHN FUNK: I go along if you decide it is a partnership asset.

\* \* \* \* \* \*

MR. ELSING [One of the arbitrators]: Would this be satisfactory to have a stipulation you go ahead and submit your case and any award we make can be filed in the superior court as a judgment?

MR. BAYHAM: I would accept that.

MR. PRIMOCK: With no ifs, ands or buts?

MR. BAYHAM: I accept it the same as if it were a judgment determining this matter.

MR. PRIMOCK: I will go along with that. There is one question that bothers me, I intend to introduce evidence as to the three brothers, two brothers and a nephew [appellants], getting rid of John [appellee] in his entirety, buying out the value of Greyhound Parks, Western Racing, Inc., Washington Land Company, and so forth. If this stipulation will cover all of that, I mean, the stipulation that you just gave if it is broad enough to cover all of what I am going to try to do—not that I may succeed, but if I try to do it and it is done, if it covers that, I am willing to do it. I want to end it for all times.

MR. BAYHAM: Perhaps we would go farther and stipulate further that it can be filed as a judgment, the award could be as a judgment, in the action which has been mentioned.

MR. PRIMOCK: I will go with that. The 129497, whatever award here is the judgment.

MR. BAYHAM: So stipulated.

\* \* \* \* \* \*

MR. PRIMOCK: \* \* \* You would agree that if they decide John keep it, he gets to keep it, if they decide he must sell it, they set the price and the terms?

MR. BAYHAM: This is correct. \* \* \*"

It can be seen from the foregoing that all of the parties, through their counsel, agreed that the board should be allowed to determine whether the stocks and debenture bonds in issue were part of the partnership assets. The stipulation of September 17, 1962, was the final wording by the parties of their agreement. We conclude from reading the foregoing and the stipulation that the parties agreed beyond a reasonable doubt that the stocks and debenture bonds in issue were to be submitted to the board of arbitration as proper subject matter with which the board was to deal.

Our Supreme Court, in Cracchiolo v. Carlucci, 62 Ariz. 284, 288, 157 P.2d 352, 354 (1945), in dealing with a very similar problem, found the following arbitration submission agreement to be sufficiently certain and comprehensive to support an award:

"\* \* \* the parties have agreed to submit all controversies and difference between them to arbitration \* \* \*."

We can find no difference between the *Cracchiolo* case, and the submission of "all controversies," and the instant case where it was stipulated that "evidence shall be introduced before the arbitrators" and where that evidence included the stocks and debenture bonds of the appellee.

An arbitration agreement may give the arbitrators full power to decide both questions of law and fact and by submitting an entire dispute to the board of arbitration, the parties submit the law as well as the facts to the judgment of the arbitrators. 5 Am.Jur.2d, Arbitration and Award, § 58, at 563–64; Riley v. Pig'n Whistle Candy Co., 109 Cal.App.2d 650, 241 P.2d 294 (1952); and, Lundgren v. Freeman, 307 F.2d 104 (9th Cir. 1962). By the stipulation of September 17, 1962, and by the partnership agreement the parties gave the board of arbitration authority to decide all matters submitted to it and that their award "shall have the same force and effect as though entered by a judge of the Superior Court \* \* \*." The courts will or will

not enforce arbitration awards depending upon their validity. However, the courts will not vary an arbitration award which is contested on the merits of the controversy submitted to the board or on the sufficiency of the evidence upon which the board bases its decision. 5 Am.Jur.2d, Arbitration and Award, § 145, at 626–27; Pacific Vegetable Oil Corp. v. C. S. T., Ltd., 29 Cal.2d 228, 229, 174 P.2d 441 (1946); and, Monte v. Southern Delaware County Authority, 335 F.2d 855 (3d Cir. 1964).

Charles John Funk in his cross appeal questions alleged irregularities in both the arbitration proceedings and the award. He contends that the majority of arbitrators have not only miscalculated in their figuring but also have acted with such misconduct as to constitute legal fraud. However, appellee cites no specific facts nor does he establish affirmative proof to support his allegations. His sole authority for his claim is his own appointed arbitrator's dissenting opinion.

█ We find no evidence of fraud in the record. The parties stipulated to be bound by the award. In the absence of proof of fraud, this court holds the appellee to his arms-length agreement. Mere allegations that an award was fraudulent or inadequate are insufficient to require this court's judicial inquiry. 5 Am·Jur.2d, Arbitration and Award, § 186, at 656–57; Second Soc. of Universalists v. Royal Ins. Co., 221 Mass. 518, 109 N.E. 384 (1915).

The judgment modifying the arbitration award and judgment thereon is vacated and the original judgment on the award is affirmed.

MOLLOY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.