[Civil No. 4049.  Filed October 30, 1939.]

[95 Pac. (2d) 49.]

## JACK GATES, Appellant, v. ARIZONA BREWING COMPANY, a Corporation, Appellee.

Mr. Austin O'Brien, for Appellant.

Mr. I. A. Jennings and Mr. Henry S. Stevens, for Appellee.

LOCKWOOD, J.—Jack Gates, hereinafter called plaintiff, brought suit against Arizona Brewing Company, a corporation, hereinafter called defendant, to recover wages which he alleged were due for work

performed by him for defendant under a certain contract. The case was tried to a jury, which failed to agree on a verdict, and was finally retried to the court sitting without a jury.

Upon plaintiff offering to introduce evidence in support of his complaint, defendant objected on the ground that the complaint did not state a cause of action, the contention being that the contract sued on provided that before an action could be brought for breach thereof, the matter must be first arbitrated, and since the complaint did not allege that any arbitration or attempt at arbitration had been made, it failed to state a cause of action. The court stated it would sustain defendant's objection and grant the plaintiff leave to amend his complaint, whereupon, plaintiff electing to stand upon his pleadings, judgment was entered dismissing the complaint, and the matter was, after various procedural formalities to which we need not refer, brought before us on this appeal.

The contract, which is the basis of the action, was entered into between the defendant and Local No. 338 of the International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America, hereinafter called the union, of which plaintiff was a member. The contract contained fourteen sections and regulated very minutely who should be employed by the defendant in its business, the conditions of employment and discharge, and the wages to be paid. Section 13 read as follows:

"An attempt shall be made between the employer and local union to first settle all differences or misunderstandings which may arise. If any adjustment satisfactory to both parties cannot be reached in this way, then the matter shall be settled by a Board of Arbitration, constituted in the following manner: Two shall be selected by the employer and two by the local union; in case they cannot agree, these four members of the board shall select a fifth member, and a

majority decision shall then be binding upon both parties. Men shall not leave work before or pending the decision of the Board of Arbitrations.''

According to the allegations of the complaint, plaintiff performed service for defendant under such contract for which there was due and unpaid him, in accordance with the wages fixed thereby, the sum of $353.49. There is no allegation in the complaint that there was ever any attempt made by plaintiff to submit the difference between him and defendant to arbitration, as provided by section 13, *supra*.

It was the position of defendant, which was sustained by the trial court, that section 13, *supra,* was a legitimate and valid part of the contract, and that arbitration, or an attempt at arbitration, was a condition precedent to plaintiff's attempt to recover in court on his claim of wages, and that even if section 13 was invalid as contrary to public policy, the remaining part of the contract contained no obligations whatever on the part of the union, and was therefore void for lack of mutuality.

It is the contention of plaintiff that section 13, *supra,* is void as contrary to public policy under the common law, and is in violation of the Arizona arbitration statutes, and that the remaining clauses of the contract are valid because there are ample mutual covenants entered into by both parties to the contract. We consider first the validity of section 13, *supra*.

■■ Broadly speaking, arbitration is a contractual proceeding, whereby the parties to any controversy or dispute, in order to obtain an inexpensive and speedy final disposition of the matter involved, select judges of their own choice and by consent submit their controversy to such judges for determination, in the place of the tribunals provided by the ordinary processes of law. 6 C. J. S., Arbitration and Award, page 152, section 1. There are two kinds of arbitration, one

under the common law and the other by virtue of express statutes. Under the common law, the overwhelming weight of authority holds that an agreement that all disputes and contentions which may arise between the parties under a contract shall be settled by arbitration to the exclusion of the courts, is void as an attempt to oust the courts of jurisdiction. 13 C. J. 457 and cases cited. This rule is set forth in *Blodgett Co.* v. *Bebe Co.,* 190 Cal. 665, 214 Pac. 38, 39, 26 A. L. R. 1070, in the following language:

"It was early settled in the jurisprudence of this state, in conformity with that of practically all the states, that an agreement between parties to a contract to arbitrate all disputes thereafter to arise thereunder is invalid and unenforceable, as constituting an attempt to oust the legally constituted courts of their jurisdiction and to set up private tribunals, but that, if the matter to be submitted to the arbitrators was the mere finding of a fact or facts the determination of which is essential to the accrual of the cause of action itself, such arbitration or finding becomes a condition precedent to the right to sue, and is therefore not within the general rule. Judges and commentators have ascribed the origin of the rule to the jealousy of courts in the matter of their power and jurisdiction and have been somewhat inclined to criticize it on that ground. Another and better ground assigned for it is that citizens ought not to be permitted or encouraged to deprive themselves of the protection of the courts by referring to the arbitrament of private persons or tribunals, in no way qualified by training or experience to pass upon them, questions affecting their legal rights. Whatever may be the true origin of the rule, it is very generally established, and there can be no doubt that it prevails in California."

While it is true, as urged by defendant, that the right of arbitration has been greatly extended in recent years, this is practically universally done by statute. The legislature, of course, has the power, in its discretion to extend this right, but in such a case

the right is not governed by the common law, but by the statute which grants it.

Arizona, like most of the other states, has provided a statutory method of arbitration. In the Code of 1928 the statute defining the right of arbitration was section 4294, which read as follows:

*"Right to arbitrate; agreement; arbitrators.* Persons may submit any dispute, controversy, or right of action to arbitration, upon signing an agreement in writing to arbitrate the matter in dispute, naming the parties as plaintiff and defendant. In the agreement each party shall name for himself one arbitrator who shall not be related to either party by consanguinity or affinity, possessing the qualifications of a juror, and who is not interested in the result of the matter to be submitted for his decision."

This was modified by chapter 72 of the sessions laws of 1929, as follows:

"Section 1. *Validity Of Arbitration Agreements.* A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract; provided, however, that the provisions of this act shall not apply to collective contracts between employers and employees, or between employers and association of *employers,* in respect to terms or conditions of employment." (Italics ours.)

■■ Upon examining this last section, it will be seen there is an obvious misprint in the use of the italicized word "employers", and that in order to be intelligible, it should read "employees". A court should, in construing a statute, use the word which was obviously intended to be included, instead of one which was plainly used by mistake. *Steinfeld & Co.* v. *Allison Mining Co.,* 41 Ariz. 340, 18 Pac. (2d) 267; *Keller* v. *State,* 46 Ariz. 106, 47 Pac. (2d) 442; *Carr* v.

*Frohmiller,* 47 Ariz. 430, 56 Pac. (2d) 644; *Higgins' Estate* v. *Hubbs,* 31 Ariz. 252, 252 Pac. 515. Thus read, it will be seen that the contract in question falls within the proviso of chapter 72, *supra.* Section 13 of the contract is prohibited by chapter 72, *supra,* and is therefore void. For this reason we are constrained to hold that both under the common law and the statute the clause cannot stand, and that plaintiff was not obliged to submit his controversy with defendant to arbitration before he brought this action.

■■ The next question is whether the contract is void for lack of mutuality. It is the general rule that there must be mutuality of obligation to constitute a binding contract, and this court has approved the rule in *Taylor* v. *Kingman Feldspar Co.,* 41 Ariz. 376, 18 Pac. (2d) 649, 651, in the following language:

" . . . Mutuality is well defined as follows: 'Mutuality of contract consists in the obligation on each party to do, or to permit something to be done, in consideration of the act or promise of the other. Contracts lacking in mutuality are often termed unilateral contracts. Mutuality of obligation is an essential element of every enforceable agreement. Mutuality is absent when one only of the contracting parties is bound to perform, and the rights of the parties exist at the option of one only. And, conversely, a contract is not unilateral where it contains mutual obligations binding on both parties. Mutuality does not require that both engagements must be expressed in the same form, for one may be in writing and the other by parol. The benefits or liabilities of the parties need not be equal. It is sufficient that a consideration moved to both parties, and *mutual promises are not essential where a sufficient consideration is otherwise present.* Where there are mutual promises between the parties, it is not necessary to render a particular promise by one party binding that there be a special promise on the part of the other party directed to that particular obligation.' 13 C. J. 331. (Italics ours.)"

The question then is whether in the contract in question, after section 13 is deleted therefrom, there are sufficient mutual promises, either express or implied, to support it. There is no doubt that defendant made many promises to the union, but upon a casual reading of the contract it might be imagined that there are no specific promises made by the union, on behalf of its members, to the defendant. A careful consideration of all of its terms, however, will show that there are certain definitely implied promises. In the first place sections 1 and 5 read, respectively, as follows:

"None but members in good standing in the International Union of the United Brewery, Flour, Cereal, and Soft Drink Workers of America shall be employed by the party of the first part."

"Reason for discharge shall be incompetence, neglect of duty, or disobedience towards the employer, or any duly authorized heads of departments."

We think the only reasonable implication to be drawn from these sections is that the union promises that its members who work for defendant shall be competent, obedient to the legitimate commands of their employer, and that they shall perform the duties imposed upon them in a proper manner, and that if they do not do so, they may be discharged by the employer. Further, section 12 provides a carefully worked out schedule of wages, and section 14 is in this language:

"This agreement shall take effect on October 15, 1934, and shall remain in force until April 15, 1935. In the event of any changes being contemplated by any party hereto, due notice must be given in writing of such intention to the other party, and state conditions thirty days prior to the expiration of this contract, and unless such notice is given this agreement shall automatically continue from year to year."

This is clearly a promise on behalf of the union that it will not demand any change in wages or conditions

except upon notice given to the employer thirty days in advance of the annual termination of the contract. We think there can be no question that the union, and therefore plaintiff who is a member thereof, is under certain very distinct obligations to the defendant. Whether these obligations are as onerous as those undertaken by the defendant is not a question for our consideration. They are legally sufficient to sustain the contract as being mutual.

The only two cases cited us, discussing contracts of a like nature, are *Nederlandsch Amer. S. M.* v. *Stevedores' & L. B. Soc.*, (D. C.), 265 Fed. 397, and *Powers* v. *Journeymen Bricklayers' Union No. 3*, 130 Tenn. 643, 172 S. W. 284, L. R. A. 1915E 1006. While the provisions of the contracts therein are not identical with those of the one involved in the present case, they do sustain the proposition that implied terms are just as much a part of a contract as written ones, and that the implications which we have drawn from this contract are legitimate and enough to sustain it on the ground of mutuality.

The judgment of the superior court is reversed and the case remanded with instructions to overrule defendant's objection to the introduction of evidence on the ground that the complaint does not state a cause of action, and to proceed to trial on the merits in accordance with the principles laid down herein.

ROSS, C. J., and McALISTER, J., concur.