75 P.3d 132

John W. SHAMROCK, a single man; Arthur A. and Lois J. Gilcrease Family Trust by Arthur A. and Lois J. Gilcrease, Trustees; David H. Hemmings, a single man; The Pollard Family Trust by James E. and Marie T. Pollard, Trustees; J.C. & C. Investments, L.L.C. by Robert Oliver Cromwell, partner; Edward E. Smith and Margaret Smith, husband and wife; Lewis Revocable Trust by Francis W. Lewis and Marlene C. Lewis, Trustees, Joe Kaczmarski and Ada Kaczmarski, husband and wife; and William R. Detor, a single man, Plaintiffs–Appellees,

v.

WAGON WHEEL PARK HOMEOWNERS ASSOCIATION, a nonprofit Arizona corporation, Defendant–Appellant.

No. 1 CA–CV 02–0403.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 26, 2003.

As Amended Sept. 5, 2003.

of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.

Jackson White, P.C. By James L. Tanner, Mesa, Attorneys for Appellees.

Olcott & Shore, PLLC By Jonathan J. Olcott, William F. Shore, III, Phoenix, Attorneys for Appellant.

## OPINION

TIMMER, Judge.

¶ 1 How can mandatory membership in a newly created homeowners' association be imposed on residents of an existing subdivision? We resolve that question in Wagon Wheel Park Homeowners Association's appeal of a summary judgment entered against it on appellees' complaint for declaratory and other relief. For the reasons that follow, we hold that mandatory membership in a new homeowners' association can only be imposed on owners of lots within an existing subdivision by recording deed restrictions to that effect. Because such restrictions did not exist during the relevant time period in this case, the trial court correctly entered summary judgment for appellees.

## BACKGROUND

¶ 2 Wagon Wheel Park (the "Park") is a platted, residential subdivision located in Lakeside, Navajo County, and consists of 180 lots. In July 1960, Northern Arizona Title Company executed and recorded with the county a declaration of restrictions (the "1960 Declaration") that generally concerns the development and maintenance of lots within the Park. The Declaration did not provide for the formation of a homeowners' association to either enforce those restrictions or to oversee maintenance of common areas.

¶ 3 In 1971, six owners of Park lots incorporated Wagon Wheel Park Homeowners Association (the "Association") and recorded articles of incorporation with Navajo County. The articles provide that "[o]wnership of one or more lots in Wagon Wheel Park shall

entitle the owner to membership in the corporation."

¶ 4 In 1980, upon the vote of a majority of Park lot owners, the "Chairman of Restriction Committee" recorded a revised declaration of restrictions (the "1980 Declaration"). The preamble to the 1980 Declaration acknowledged that a homeowners' association had been formed, and had evaluated the restrictions provided by the 1960 Declaration. Like its predecessor, however, the 1980 Declaration did not provide for the formation of a homeowners' association.

¶ 5 In the 1990s, the Association recorded original and amended bylaws with the county. The amended bylaws recorded in 1999 provide that all property owners within the Park are automatically members of the Association. Additionally, each member must pay assessments levied by the Association. If a member fails to do so, the unpaid assessment, together with any collection costs and attorneys' fees, becomes a lien against the member's property.

¶ 6 In March 2001, appellees, who are Park lot owners, filed a complaint claiming that the Association is not a valid mandatory homeowners' association. Appellees therefore sought a declaration from the court that, among other things, membership in the Association is voluntary and that the Association cannot properly impose assessments against non-member lot owners or record liens for unpaid assessments. Appellees also sought injunctive and other equitable relief corresponding to the requested declaratory judgment. The Association filed a counterclaim asserting claims for declaratory relief and for breach of contract against one appellee stemming from his refusal to pay assessments.

¶ 7 On November 30, while the lawsuit was pending, and pursuant to a vote by the majority of lot owners within the Park, the Association recorded an amendment to the 1980 Declaration. This amendment provides that the Association would administer the recorded restrictions and maintain the common property in the Park. The amendment further provides for automatic membership in the Association for Park lot owners.

¶ 8 Meanwhile, the court granted appellees' motion for summary judgment and denied the Association's cross-motion for summary judgment on the issue of appellees' standing under Arizona Revised Statutes ("A.R.S.") section 10–3304 (Supp.2002) to bring and maintain its lawsuit. The court ruled that all encumbrances recorded by the Association against Park lots were void from the date of recording until November 30, 2001. The court also ruled that A.R.S. § 10–3304 did not apply to deprive appellees of standing to maintain their lawsuit. Finally, the court awarded attorneys' fees to appellees. This appeal followed.[1]

## DISCUSSION

¶ 9 The Association argues the trial court erred by failing to apply A.R.S. § 10–3304, which provides, in pertinent part, that a corporation's power to act may only be challenged "by members having at least ten per cent or more of the voting power or by at least fifty members." According to the Association, the appellees are mandatory members of the Association due to their property ownership in the Park, and thus subject to the standing requirements of § 10–3304.[2] Because the number of appellees falls below the threshold number required by § 10–3304, the Association contends the trial court erred by ruling that this provision did not apply to appellees. Alternatively, the Association asserts that disputed issues of material fact exist concerning the applicability of § 10–3304, which should have precluded summary judgment.[3]

---

1. By separate unpublished decision filed this date, we address the Association's challenge to the attorneys' fees award. That issue is not relevant to our analysis in this opinion and does not meet the standards of publication set forth in Ariz. R. Civ.App. P. 28(b). *See Fenn v. Fenn*, 174 Ariz. 84, 85, 847 P.2d 129, 130 (App.1993).

2. The Association does not contend that § 10–3304 applies to preclude appellees' lawsuit if they are not members.

3. Recently, the legislature amended A.R.S. § 10–3304 by providing that it is inapplicable to "a proceeding in which a member of a planned community as defined in section 33–1802 challenges the actions of the board of directors of the planned community." The legislature did not

¶ 10 Appellees respond that § 10–3304 is inapplicable because no facts suggest they were members of the Association. They contend they did not automatically become members upon acquiring their Park lots because the Association was not legally formed as a mandatory homeowners' association. Additionally, they deny voluntary membership in the Association. Thus, to determine the applicability of § 10–3304, and the correctness of summary judgment, we must decide whether any facts support a finding that appellees were either involuntary or voluntary members of the Association.

■ ¶ 11 To begin, the Association, a non-profit corporation, could not have imposed membership on appellees absent their express or implied consent. A.R.S. § 10–3601(B) (Supp 2003) ("No person shall be admitted as a member without that person's consent. Consent may be express or implied."). Thus, the amended bylaws recorded in 1999 did not, standing alone, confer membership status on appellees. The Association argues, however, that it is a homeowners' association with mandatory membership under Arizona's Planned Communities Act, A.R.S. § 33–1801 to –1808 (2000 & Supp. 2003) (the "Act"). Thus, according to the Association, no additional evidence of consent was necessary to establish appellees as members.

¶ 12 The Act, adopted in 1994, governs the rights and obligations of homeowners' associations that impose mandatory membership on property owners within planned communities. A.R.S. §§ 33–1801 through –1808. The definitional section of the Act describes the characteristics of a planned community association as follows: (1) a non-profit corporation or unincorporated association, (2) created pursuant to a declaration, (3) and comprised of property owners within a real estate development, (4) who are mandatory members and are required to pay assessments to the association, (5) for purposes of managing, maintaining or improving property, (6) owned and operated by the association. A.R.S. §§ 33–1802(1) and (4). A "declaration" refers to "any instruments, however denominated, that establish a planned community and any amendment to those instruments." A.R.S. § 33–1802(3).

¶ 13 The Association argues that the prior declarations, together with the Association's articles of incorporation and amended bylaws, combined to constitute a proper "declaration" under the Act. But the Association misconstrues the Act. The Act's definitions identify the types of homeowners' associations subject to the Act: those with mandatory membership and that require payment of assessments. The Act does not, however, prescribe how to create such an association. Accordingly, we refer to the common law governing restrictive covenants to decide whether the prior declarations, the Association's articles of incorporation, and its amended bylaws, taken together, mandated appellees' membership in the Association.

■ ¶ 14 In order to impose automatic membership on owners of property located within a neighborhood or community development, this requirement must appear in a deed restriction embodied within a recorded instrument. *See Duffy v. Sunburst Farms East Mut. Water & Agric. Co.,* 124 Ariz. 413, 416, 604 P.2d 1124, 1127 (1979); *Hueg v. Sunburst Farms (Glendale) Mut. Water and Agric. Co.,* 122 Ariz. 284, 288, 594 P.2d 538, 542 (App.1979) (citation omitted) ("As a general rule, the acceptance by the grantee of a deed containing covenants to perform is binding upon him."); Wayne S. Hyatt, *Condominium and Homeowner Association Practice: Community Association Law,* § 3.03(a) (2d ed.1988). Such a restriction constitutes "a contract between the subdivision's property owners as a whole and the individual lot owners." *Horton v. Mitchell,* 200 Ariz. 523, 525, ¶ 8, 29 P.3d 870, 872 (App.2001) (quoting *Arizona Biltmore Estates Ass'n v. Tezak,* 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (1993)). The 1960 Declaration established the original deed restric-

---

provide for retroactive application of the amendment, and the amendment therefore becomes effective on the ninety-first day after the day on which the legislative session adjourns. *True v. Stewart,* 199 Ariz. 396, 397, ¶ 3, n. 1, 18 P.3d 707, 708 n. 1 (2001) (citation omitted). In this case, the amended version of § 10–3304 becomes effective on September 18, 2003.

tions for purchasers of lots within the Park. That declaration was replaced by the 1980 Declaration, which both modified and added restrictions. However, neither declaration required membership in a homeowners' association.

¶ 15 The Association contends that its recorded articles of incorporation and amended bylaws, which mandated membership, were sufficient to constitute restrictive covenants that bind appellees' use of their Park lots. We disagree. Owners of lots within a community may modify or extinguish deed restrictions. *Hueg*, 122 Ariz. at 288, 594 P.2d at 542. However, the manner of making such modifications is governed by the declaration in effect. *See La Esperanza Townhome Ass'n, Inc. v. Title Sec. Agency of Arizona*, 142 Ariz. 235, 239, 689 P.2d 178, 182 (App.1984) (holding restrictions and conditions in declaration can only be changed uniformly as declaration does not grant powers to make changes on any other basis); *Evergreen Highlands Ass'n v. West*, 73 P.3d 1 (Colo.2003) (holding declarations that allow for "change" or "modification" to covenants by majority vote expansive enough to allow addition of covenant requiring membership in homeowners' association).

¶ 16 The 1980 Declaration authorizes changing the restrictive covenants as follow:

The foregoing restrictions and covenants run with the land and shall be binding on all persons owning any of said lots in said Wagon Wheel Park for a period of five (5) years from this date and after the date hereof at expiration of which time said covenants shall be automatically extended for successive periods of five (5) years each, *unless by a vote of the majority of the then owners of the said lots in said Wagon Wheel Park, it is agreed to change the said covenants in whole or in part.*

Emphasis added.[4] The record does not reflect that the majority of Park lot owners amended the 1980 Declaration to require membership in the Association until November 30, 2001. Thus, up to that time, the Association's articles of incorporation and amended bylaws did not effect a change in the restrictions set forth in the 1980 Declaration.[5] *See La Esperanza*, 142 Ariz. at 239, 689 P.2d at 182 (concluding amendments to restrictions that are not properly executed never become effective). Therefore, appellees were not automatically enrolled as members of the Association by virtue of their ownership of Park lots.

¶ 17 The Association additionally contends that a question of fact exists concerning appellees' membership status because they acknowledged the existence of the Association and that its amended bylaws required membership, and through counsel they expressed uncertainty during a hearing about their membership status. We are not convinced. The appellees' awareness that the Association's amended bylaws purported to confer membership on all Park lot owners was insufficient to confer such memberships. A.R.S. § 10–3601(B). Additionally, appellees' attorney explained that he was uncertain about his clients' membership in the Association because he "wasn't ever aware of the issue." He then questioned whether mandatory membership could be imposed simply by an owner's purchase of a lot. We do not discern any issues of fact concerning appellees' membership in the Association.

¶ 18 In conclusion, prior to November 2001, appellees were not members of the Association merely because they also owned lots within the Park. Also, no other facts in the record suggest that appellees were voluntary members of the Association at the time they initiated their lawsuit. For these reasons, A.R.S. § 10–3304 did not apply to deprive appellees of standing to maintain this lawsuit. In light of our decision, we do not address appellees' additional arguments concerning the applicability of § 10–3304.

4.  Appellees contest the legality of the 1980 Declaration. We need not resolve that issue, however, as the 1960 Declaration also provides for change of the restrictions by majority vote.

5.  Appellees argue that the amendment to the 1980 Declaration was invalid. The validity of this amendment was not challenged in appellees' complaint or in any amendment to the complaint. Additionally, the trial court did not rule on the issue. Thus, we do not decide the validity of the November 2001 amendment or its effectiveness against existing lot owners.

## CONCLUSION

¶ 19 For the foregoing reasons, we affirm the summary judgment. However, for the reasons set forth in the companion memorandum decision, we reverse the portion of the judgment awarding fees and remand to the trial court for a new calculation of the award. Finally, in our discretion, we grant appellees' request for an award of attorneys' fees incurred in this appeal pursuant to A.R.S. § 12-341.01. The amount of the award will be determined upon appellees' compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

CONCURRING: DANIEL A. BARKER, Presiding Judge and WILLIAM F. GARBARINO, Judge.