IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| WILLIAM G. NICKERSON and REGINA J. NICKERSON, husband and wife; LARRY W. AHO and PATRICIA THOMPSON, husband and wife; LORRAINE ALVES, Trustee of the ALVES REVOCABLE TRUST; ANDREW G. ANDERSON and LEIANN ANDERSON, husband and wife; KENT JAY ANDERSON and TRINIDAD ANDERSON, husband and wife; SANDRA G. BARRETT, a single woman; DOLORES M. BEARD and O.A. BEARD, Trustees of the BEARD REVOCABLE TRUST; DAVID P. BELL and HELEN R. BELL, husband and wife; SHARON M. BERG, a single woman; DONALD BJORKMAN and PAMELA BJORKMAN, husband and wife; JACK L. BLACKSTONE and NORMA JEAN BLACKSTONE, husband and wife; GISELA BRANSON REVOCABLE LIVING TRUST; PHILIP G. BRENNAN, a single man; MARY C. BROWN, a single woman; PATRICIA ANN BYERS, a single woman; GERALD CALLIS and M. BUNNY CALLIS, husband and wife; FRANK CARELLA and EDNA CARELLA, husband and wife; LARRY CEDERHOLM, a single man; PHYLLIS A. CONLEY, a single woman; THOMAS COOKE, a single man; PAMELA A. WISE CURRIER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 2 CA-CV 2010-0197 DEPARTMENT B  O P I N I O N |

also known as PAMELA A. WISE, )
solely and separately; HOWARD V. )
DANIELSON and GLORIA M. )
DANIELSON, husband and wife; )
JERRY A. DOUGHTY and EVA L. )
DOUGHTY, husband and wife; )
CAROLYN B. EDDINGTON, a single )
woman; SALLY A. ELLIOTT and )
CHARLES F. ELLIOTT, husband and )
wife; ROBERT A. FALLON and )
HELEN L. FALLON, husband and )
wife; SANDRA FRANCES, a single )
woman; HELEN F. GAWRILOW, )
Trustee of the GAWRILOW LIVING )
TRUST; RICHARD H. GOHEEN and )
FRANKIE E. GOHEEN; WAYNE C. )
GRANGER and WINIFRED M. )
GRANGER REVOCABLE LIVING )
TRUST; ROBERT GREGORY and )
BEVERLY GREGORY, husband and )
wife; JOHN H. GULDAN, a married )
man in his individual capacity; PAUL )
B. HAMM and JANE M. HAMM, )
husband and wife; DIANE J. )
HANDLON, a single woman; )
KATHERINA HARDER, a single )
woman; HARVEY E. HASTRUP, a )
single man; RONALD W. HAWKINS )
and ROBERTA J. HAWKINS, )
Trustees of the HAWKINS LIVING )
TRUST; DAVID D. HAYNES and )
ALICE GARN HAYNES, husband )
and wife; MICHAEL JENSON and )
JACQUELINE JENSEN, husband and )
wife; EUGENE H. KEENE and )
ALICE L. KEENE, husband and wife; )
JANE D. KILLILEA, a single woman; )
KENNETH KIME and BETTY )
KIME, husband and wife; ALBERT )
W. KROSKA and MARJORIE A. )
KROSKA, husband and wife; )
BARBARA LEMAY, a single woman; )

2

ALBERT D. LEPAGE and SALLY                )
LEPAGE, husband and wife;                )
PATRICIA A. LEDFORD, a single             )
woman; JOHN A. LIETZKE and               )
FLORICE K. LIETZKE, husband and          )
wife; JUSTIN LOVELESS and                )
CARREL EILEEN LOVELESS,                   )
husband and wife; CATHERINE M.           )
MANLEY REVOCABLE TRUST;                   )
FREDRICK W. MARINE and                    )
GLORIA M. MARINE, husband and            )
wife; CURTIS E. MARTIN and               )
MARYANNE MARTIN, husband and             )
wife; RON MARTINESI, a single            )
man; JOSEPH MCMAHON and                  )
CHRISTINE MCMAHON, husband               )
and wife; JOHN B. MILLAND, a single      )
man; ALAN D. MILLS and CAROL E.          )
MILLS, husband and wife; RICHARD M.      )
OLTMAN and PATRICIA E. OLTMAN,           )
husband and wife; HANSI R.               )
PATIENCE, a single woman and her         )
daughter PAMELA P. MCGONIGAL;            )
SUSAN A. PICKRELL, a single woman;       )
CHARLES K. POE, a single man; MARY       )
F. RIINA, a single woman; GREGORY        )
D. SCHOENBERG, a married man in his      )
individual capacity; PETER W.            )
SCHULER and SUZANNE G.                    )
SCHULER, husband and wife;               )
ELEANOR G. SNYDER, a single              )
woman; LARRY H. STANFORD and             )
JOSY STANFORD, husband and wife;         )
FRANK I. SUPAN and CONNIE L.             )
SUPAN, husband and wife;                  )
ESPERANZA WALKER, a single               )
woman; THOMAS J. WASIL, a single         )
man; CHARLES WHEELOCK, a married         )
man in his individual capacity; MARY L.  )
WILLIAMS, a single woman; SANDRA         )
ZARLENGO-ALBERS, a single woman;         )
LEO A. ZEHRER and MARY V.                )
ZEHRER, husband and wife; JOHN           )
BEERS and DOROTHY BEERS,                  )

3

husband and wife; ROY BEVERS; )
MARILYN GIBBS and IVAN GIBBS; )
JOHN HOVEY and KAREN HOVEY; )
GREG NELSON, STEVE RANEY, )
ROBERT SARTAIN; CAROL WILSON )
and ROBERT WILSON, husband and )
wife; HELEN STORM, a single woman; )
and DARRYL L. SIMMONS and )
KATHLEEN M. SIMMONS, husband )
and wife, )
)
              Plaintiffs/Appellants/ )
              Cross-Appellees, )
)
        v. )
)
GREEN VALLEY RECREATION, )
INC., an Arizona corporation, )
)
             Defendant/Appellee/ )
             Cross-Appellant. )
)

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20090082

Honorable Paul E. Tang, Judge

AFFIRMED

---

Law Office of Brian Laird, PLLC
  By Brian A. Laird                     Tucson

and

Weeks Law Firm, PLLC
  By Stephen M. Weeks             Tucson
                             Attorneys for
                      Plaintiffs/Appellants/
                          Cross-Appellees

The Shiaras Law Firm, PC
  By Robert Mackenzie

Scottsdale
Attorneys for
Defendant/Appellee/
Cross-Appellant

John E. Droeger

Green Valley
In Propria Persona
Amicus Curiae

E S P I N O S A, Judge.

¶1        This appeal presents a novel issue in Arizona involving the enforceability of real covenants requiring membership in a recreational association. Plaintiffs/appellants/cross-appellees, homeowners in the town of Green Valley, challenge the trial court's entry of summary judgment in favor of defendant/appellee/cross-appellant Green Valley Recreation, Inc. (GVR) in the plaintiffs' action seeking to quiet title, declaratory relief, and damages in connection with these covenants. They also challenge the court's denial of their motions for new trial and reconsideration. GVR cross-appeals from the court's denial of its request for attorney fees. We affirm for the reasons set forth below.

**Factual Background and Procedural History**

¶2        On appeal from a summary judgment, "[w]e view the facts and any inferences drawn from those facts in the light most favorable to the part[ies] against whom judgment was entered." *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 165 P.3d 173, ¶ 15, 165 P.3d 173, 177 (App. 2007). In 1978, two nonprofit corporations

5

merged to form GVR, a nonprofit corporation whose purpose, according to its articles of incorporation and bylaws, is to serve its members' recreational needs, operate and maintain recreational and social facilities, and sponsor cultural and civic activities in Green Valley. Since the merger, there have been two means by which homeowners may be members of GVR. The great majority of members own homes in subdivisions whose declarations of covenants, conditions, and restrictions (CC&Rs) require all homeowners in the development to be GVR members.

¶3 Other homeowners have become GVR members through private membership agreements between GVR and either the homeowner or a previous owner of the subject property. These signed membership agreements have been recorded against the signers' respective properties and refer to a separate document, the Master Deed Restriction (MDR). The MDR, which also has been recorded, makes homeowners and "their heirs, personal representatives, successors and assigns" GVR members and requires them "to pay the dues and assessments established by [GVR]." The MDR applies almost exclusively to homeowners who have membership agreements and whose homes are not within member subdivisions, although there is a small minority whose homes are subject to CC&Rs that refer to the MDR and thereby require these homeowners to maintain membership. Most of the plaintiffs in this action are members subject to the MDR.[1]

---

[1] The plaintiffs argue that certain of them, including John Guldan, do not "have a document in their chain of title mandating membership in GVR." But they cite nothing in the record to counter GVR's assertion, which the record supports, that all the plaintiffs,

¶4        In 2000, following a vote by GVR members, GVR's board of directors amended its bylaws to impose on all members a "new member capital fee," which, according to GVR's executive director, is assessed "to a person who purchases a property requiring GVR membership when that person has not been a GVR member within the preceding year." The MDR was modified to reflect the change and mandated the assessment for each owner of a membership property subject to the MDR, as well as "his or her personal representatives, successors and assigns." In January 2009 the plaintiffs sued GVR, seeking to quiet title, damages, and declaratory relief, and alleging the deed restrictions had been recorded illegally, the agreements were unconscionable and lacked mutuality of obligation, and the agreements did not create valid deed restrictions that run with the land.[2] The plaintiffs also filed an application for a preliminary injunction seeking to bar GVR from initiating collection efforts or placing liens on their properties during the course of the litigation. The trial court denied the application, ruling that "the Master Deed Restriction and subject Agreement(s) are enforceable as equitable servitudes" and the plaintiffs "ha[d] not shown a strong likelihood of success on the merits."

¶5        GVR subsequently filed a motion for summary judgment as to all six counts, and the plaintiffs moved for partial summary judgment on several of the

excepting only Guldan, have either recorded private agreements or deed restrictions binding them to membership in GVR or a GVR predecessor.

[2]The plaintiffs later amended their complaint to allege the new-member fee was unconscionable and the servitudes were invalid due to changed conditions.

counts.  The trial court granted GVR's motion, agreeing with its assertion that the ruling on the preliminary injunction constituted "law of the case" and the recorded agreements therefore were valid contracts that created servitudes that run with the land.  The court additionally ruled that the plaintiffs' challenge to the new-member fee was "unripe" because it was "based on [a] hypothetical future event" and, in any case, the fee was valid "[a]s a transfer fee for the purpose of building a reserve fund for the maintenance and rehabilitation of GVR facilities."  The plaintiffs filed a motion for reconsideration and a new trial, arguing the court had erred in applying the law-of-the-case doctrine, Arizona requires that servitudes touch and concern the land in order to run with the land, the new-member fee violated A.R.S. § 33-442, and the MDR could not have been amended legally.  The court denied the motion and also denied GVR's request for attorney fees.

¶6        The plaintiffs appeal from various rulings of the trial court, including its rulings on the motions for summary judgment and new trial.  GVR cross-appeals from the court's denial of its request for attorney fees.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A).

**Discussion**

¶7        The entry of summary judgment is appropriate "if the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Ariz. R. Civ. P. 56(c)(1).  "In reviewing a motion for summary judgment, we determine de novo whether any genuine

8

issues of material fact exist and whether the trial court properly applied the law." *Tierra Ranchos Homeowners Ass'n*, 216 Ariz. 195, ¶ 15, 165 P.3d at 177.

**Servitudes Running with the Land**

¶8        In its summary-judgment ruling upholding the validity of the GVR covenants, the trial court stated it was applying findings from its preliminary-injunction ruling as "law of the case." Thus, before analyzing the validity of the servitudes, we first address the plaintiffs' contention that the court erroneously applied the law-of-the-case doctrine.

¶9        The plaintiffs rely on *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, in which this court expressly held that "legal conclusions reached at the preliminary injunction phase of litigation do not constitute law of the case" and do not bind the trial court with respect to the disposition of a motion for summary judgment. 176 Ariz. 275, 280-81, 860 P.2d 1328, 1333-34 (App. 1993). But the plaintiffs have waived review of this issue because they did not object to the trial court's application of the law-of-the-case doctrine or raise the issue until they filed their motion for a new trial, even though GVR had relied on the doctrine in its motion for summary judgment. *See Conant v. Whitney*, 190 Ariz. 290, 293-94, 947 P.2d 864, 867-68 (App. 1997) (argument first raised in motion for new trial waived on appeal); *cf. Watson Constr. Co. v. Amfac Mortg. Corp.*, 124 Ariz. 570, 582, 606 P.2d 421, 433 (App. 1979) (objection to improper jury argument waived when not raised until motion for new trial). In any event, because we find the servitudes valid and enforceable on other grounds, we conclude the court

9

reached the correct result despite its erroneous application of the law-of-the-case doctrine. *See Town of Miami v. City of Globe*, 195 Ariz. 176, ¶ 8, 985 P.2d 1035, 1038 (App. 1998).

**¶10** We therefore turn to the plaintiffs' primary contention on appeal, which is that the GVR servitudes are invalid because they do not "touch and concern the land." The plaintiffs support this argument by asserting that the servitudes do not benefit outlying homeowners or increase the value of the land, yet they burden the land with a restriction not shared by neighboring properties. The plaintiffs also assert "[t]he Trial Court, after reviewing a section of the Restatement[,] . . . deemed the 'touch and concern doctrine' to be obsolete." GVR responds that the court properly found the servitudes do touch and concern the land because they benefit the plaintiffs' properties and suggests that, in any event, the touch-and-concern requirement for determining whether a servitude runs with the land no longer applies in Arizona. We examine the latter, potentially dispositive, theory first.

**¶11** Traditionally, there are four prerequisites to the creation of a "real covenant," that is, a covenant that runs with the land in perpetuity. *Federoff v. Pioneer Title & Trust Co. of Ariz.*, 166 Ariz. 383, 388 n.1, 803 P.2d 104, 109 n.1 (1990). In *Choisser v. Eyman*, 22 Ariz. App. 587, 589, 529 P.2d 741, 743 (1974), this court articulated these elements as follows:

> (1) there must be a writing which satisfies the Statute of
> Frauds; (2) the parties must intend that the covenant run with
> the land; (3) the covenant must touch and concern the land,
> i.e. make the land itself more useful or valuable to the

benefited party; and (4) privity of estate must exist between the original grantor and the grantee at the time the covenant is made.

*See also Federoff*, 166 Ariz. at 387, 803 P.2d at 108 (acknowledging touch-and-concern element must be met for servitude to run with land).

¶12 GVR points to developments in the law since *Choisser* and *Federoff* were decided that suggest a covenant may no longer be required to touch and concern the land in order to bind successive owners. GVR observes that the Restatement of Property has dispensed with the touch-and-concern element for a covenant to be enforceable so long as it is not illegal or against public policy, *see* Restatement (Third) of Property (Servitudes) §§ 2.1, 3.1, 3.7 (2000), suggesting we should adopt this approach in the absence of controlling authority to the contrary, citing *Tierra Ranchos Homeowners Ass'n*, 216 Ariz. 195, ¶ 24, 165 P.3d at 179. GVR also points out that in 2008, the legislature enacted A.R.S. § 33-440, which relates to the enforceability of private covenants and appears to abandon the touch-and-concern element.[3] *See* 2008 Ariz. Sess. Laws, ch. 119, § 1.

---

[3]Section 33-440(A) provides:

An owner of real property may enter into a private covenant regarding that real property and the private covenant is valid and enforceable according to its terms if all of the following apply:

1. The private covenant is not prohibited by any other existing private covenant or declaration affecting the real property and does not violate any statute governing the subject matter of the private covenant that is in effect before the effective date of this section.

11

Finally, in A.R.S. § 33-442, which generally prohibits and renders unenforceable the assessment of fees in connection with the transfer of property, the legislature expressly exempted fees imposed for the purpose of supporting recreational facilities, with no requirement that the servitude further touch and concern the land in order to be valid. § 33-442(C)(7).

¶13        Although these statutes call into question the continued applicability of the touch-and-concern doctrine in Arizona, we need not resolve this issue because all of the covenants here were executed before the statutes' effective dates.[4]  The general rule is that "[n]o statute is retroactive unless expressly declared therein."  A.R.S. § 1-244. Although a statute nonetheless may have retroactive application if "it is merely procedural and does not affect an earlier established substantive right," *Bouldin v. Turek*, 125 Ariz. 77, 78-79, 607 P.2d 954, 955-56 (1979), that exception does not apply here

---

2. The owner of the real property affected by the private covenant and any person on whom the private covenant imposes any liability or obligation have consented to the private covenant.

3. Any consent requirements contained in the express provisions of any existing private covenant or declaration affecting the real property have been met.

[4]House Bill 2659, which became § 33-440, did not specify an effective date.  2008 Ariz. Sess. Laws, ch. 119, § 1.  But, "[a]n act with no specified effective date takes effect on the ninety-first day after the day on which the session of the legislature enacting it adjourns sine die."  *True v. Stewart*, 199 Ariz. 396, n.1, 18 P.3d 707, 708 n.1 (2001). Section 33-440 was enacted in the second regular session of the forty-eighth legislature, which adjourned on June 27, 2008; it was therefore effective September 26, 2008.  2008 Ariz. Sess. Laws vol. 2, at XI.  Section 33-442 was enacted in 2010.  2010 Ariz. Sess. Laws, ch. 40, § 1.

because abolition of the touch-and-concern element would affect the parties' substantive rights as established when the covenants were created. Thus, even assuming, *arguendo*, these statutes eliminate the touch-and-concern requirement for covenants to run with the land, we do not rely on them to determine the enforceability of the servitudes at issue here.

**¶14** Nor need we look to the Restatement for guidance because, under the rule expressed in *Choisser* and *Federoff*, we conclude the GVR covenants do touch and concern the land. To meet that element, property must receive a benefit that makes it more useful or valuable to the benefited party. *Choisser*, 22 Ariz. App. at 589, 529 P.2d at 743. According to the MDR, each burdened property owner in this case is entitled to the benefit of "facilities and services for recreational activities and the preservation and promotion of health, safety and welfare in the Green Valley area." And the plaintiffs point to no evidence establishing any one of them has been denied these benefits.

**¶15** The plaintiffs, however, dispute there is a benefit, arguing "[t]he servitude does not improve or increase the value of the land . . . nor does it benefit the new owner after a sale since it increases costs and provides a service that the homeowner can obtain elsewhere." They assert that "[t]his is not like a community swimming pool . . . which reduces the need for neighbors to purchase their own backyard swimming pool." But the plaintiffs view "benefit" and "value" too subjectively. Although GVR membership may not be regarded as valuable by all people, nothing in the record suggests it is utterly lacking in intrinsic value; indeed, the opposite is more likely the case. *See Anthony v.*

13

*Brea Glenbrook Club*, 130 Cal. Rptr. 32, 34 (Ct. App. 1976) (burden of maintaining clubhouse, recreational areas, and swimming pool an asset to each and every property owner). And, contrary to the plaintiffs' assertion, we see no material difference between GVR membership and the plaintiffs' community-pool example. Similarly, individuals who own properties that provide GVR membership need not outfit their homes with personal recreational facilities and equipment because they are entitled to use GVR facilities and equipment.

¶16        Although we find no Arizona case directly on point, a number of cases from other jurisdictions have upheld servitudes that confer, as GVR contends in its answering brief, "membership in a recreational organization such as GVR" as "sufficient to satisfy the requirement that the servitude 'touch and concern' the land." *See, e.g.*, *Lowry v. Norris Lake Shores Dev. Corp.*, 203 S.E.2d 171 (Ga. 1974) (concluding covenant to pay annual fee for use of recreational facilities runs with purchaser's lot in residential development); *Streams Sports Club, Ltd. v. Richmond*, 457 N.E.2d 1226 (Ill. 1983) (condominium covenant requiring annual fee to sports club touched and concerned land because owners have right to enjoy club facilities); *Regency Homes Ass'n v. Egermayer*, 498 N.W.2d 783 (Neb. 1993) (finding mandatory membership in association operating recreational facilities touched and concerned land); *Four Seasons Homeowners Ass'n v. Sellers*, 302 S.E.2d 848 (N.C. Ct. App. 1983) (covenants to maintain recreational facilities touched and concerned land though facilities not adjacent to each lot); *Homsey v. Univ. Gardens Racquet Club*, 730 S.W.2d 763 (Tex. App. 1987) (requirement to pay

14

dues to racquet club touched and concerned land); *cf. Ebbe v. Senior Estates Golf & Country Club*, 657 P.2d 696 (Or. Ct. App. 1983) (covenant requiring all subsequent purchasers to pay initiation fee to golf club did not touch and concern land where purchasers not eligible for membership until age fifty and golf course did not become common property until lot owner became club member).

¶17    The plaintiffs emphasize, however, that "GVR is not located within a subdivision where all homeowners are members"; rather, "the Plaintiffs are located throughout Green Valley" and "GVR facilities are strewn through Green Valley." But they provide no controlling authority establishing, nor do they persuasively explain, why this distinction means these servitudes do not touch and concern the land. We think a more important and meaningful consideration in making this determination is access to a facility—the benefit of membership—from the burdened property. If membership were primarily for the benefit of a particular subdivision with only limited membership permitted to outsiders, then owning property in that subdivision might be significant in determining whether membership touched and concerned the land. *Cf.*, *Homsey* 730 S.W.2d at 764 (subdivision members entitled to full membership and benefits; outsiders permitted to apply only for limited membership affording no voting rights). But when, as in this case, a recreational association provides full membership opportunities and rights for persons owning property in its vicinity, the existence of a common scheme of development for burdened properties appears inconsequential as long as access to a facility is not unreasonably impeded by distance or some other factor. *Cf. Four Seasons*

15

*Homeowners Ass'n*, 302 S.E.2d 848 (rejecting argument that because some common areas not near their lots, homeowners should not be bound to maintain them). Although GVR facilities undoubtedly are located more conveniently for some member properties than others, the plaintiffs do not establish, nor do they even suggest, that any of the burdened properties is so removed from a GVR facility, or that traveling to a GVR facility is so inconvenient, that the membership requirement cannot reasonably be deemed to touch and concern the land.

**¶18** Additionally, the original parties to the covenants clearly intended that GVR membership run with the land as all the agreements and CC&Rs contain express language indicating that once a homeowner joins GVR, membership becomes a permanent encumbrance on the member's property.[5] *See Choisser*, 22 Ariz. App. at 589-90, 529 P.2d at 743-44 (parties' intent significant factor in determining whether covenant runs with land). And this strong evidence of intent to bind the land suggests that the covenantors believed the servitude benefitted the land, whether by increasing property values or otherwise.[6] For these and all the above reasons, we conclude the servitudes at

---

[5]The language of individual agreements varies, but each clearly expresses the permanence of the obligation. For example, one common expression states, "said real property shall be permanently subject to all the conditions and restrictions set forth in the Master Deed Restriction"; another reads, "I understand that by signing the voluntary deed restriction in connection with membership in [GVR], I have permanently encumbered the property involved and I have given up the right to ever cancel or terminate this [GVR] membership on this property for any reason. . . . This arrangement is irrevocable."

[6]With respect to plaintiff Guldan, for whom no recorded document requires GVR membership, *see supra* note 1, the record contains an unrecorded deed restriction, signed by the previous owner of his property, and a receipt bearing Guldan's name, information

16

issue touch and concern the burdened land. And, because neither the first *Choisser* element of a sufficient written instrument nor the fourth element of privity was disputed by the plaintiffs,[7] we agree with the trial court's ultimate determination that the deed restrictions are enforceable servitudes that run with the land.

**Validity of Contracts**

Unconscionability

**¶19**      The plaintiffs next argue the contracts[8] between the parties are unconscionable and therefore void. The determination of whether a contract is

---

relating to his property, and the notation, "G.V. Recreation tsf fee: $75.00." Moreover, Guldan continued to pay the membership fee after he bought the property. Although it does not appear he had constructive notice of the deed restriction through recordation, it is undisputed he had actual notice, and the servitude therefore may be enforced against him. *See Federoff*, 166 Ariz. at 387, 803 P.2d at 108 (covenant or restriction runs with land in equity if, *inter alia*, "successors have notice of the restriction"); *see also* A.R.S. § 33-412(B) ("Unrecorded instruments . . . as to all subsequent purchasers with notice thereof . . . shall be valid and binding."). Whether the servitude will be enforceable against future purchasers of Guldan's property will similarly depend on whether they have notice of the restriction.

[7]The amicus curiae, a resident of Green Valley but not a GVR member, asks us to find the covenants do not run with the land because there was no "horizontal privity of estate" between GVR and the plaintiffs when the respective agreements were executed. We do not address this argument because it was never asserted by the plaintiffs or considered by the trial court. *See Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 84, 638 P.2d 1324, 1330 (1981) (appellate court only decides issues raised and argued by parties); *City of Tempe v. Prudential Ins. Co. of Am.*, 109 Ariz. 429, 432, 510 P.2d 745, 748 (1973) (amici curiae not permitted to create, extend, or enlarge issues on appeal).

[8]At times, we include in the term "contract" all governing documents between the parties: the agreements, CC&Rs, MDR, bylaws, and articles of incorporation. *See Weatherguard Roofing Co. v. D.R. Ward Constr.*, 214 Ariz. 344, ¶ 8, 152 P.3d 1227, 1229 (App. 2007) (document may be incorporated by reference into contract when reference clear and unequivocal and called to attention of other party, other party

17

unconscionable is to be made by the trial court as a matter of law. *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 87, 907 P.2d 51, 56 (1995). We review questions of contract interpretation and unconscionability *de novo*. *Samaritan Health Sys. v. Superior Court*, 194 Ariz. 284, ¶ 14, 981 P.2d 584, 588 (App. 1998); *Nelson v. Rice*, 198 Ariz. 563, ¶ 13, 12 P.3d 238, 242-43 (App. 2000).

**¶20** Our supreme court has recognized two types of unconscionability: procedural and substantive. *See Maxwell*, 184 Ariz. at 84, 89-90, 907 P.2d at 53, 58-59 (unconscionability examined at time of contract formation); *see also Nelson*, 198 Ariz. 563, ¶ 13, 12 P.3d at 242-43 ("'Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e., the contract terms per se.'"), *quoting Phx. Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 179 Ariz. 289, 293, 877 P.2d 1345, 1349 (App. 1994).[9] In ruling on

consents, terms of incorporated document known or easily available to contracting parties, and context of reference makes clear writing part of contract). Whether the contracts arose by way of an owner-executed agreement, prior property-owner agreement with GVR or a predecessor, or by implication through acceptance, these distinctions do not affect our analysis because the bylaws require members to permanently encumber real property and pay fees as set by the Board of Directors, in exchange for membership rights in GVR.

[9]GVR urges us to adopt the Restatement § 3.7 to determine whether the servitudes are unconscionable, citing *Tierra Ranchos Homeowners Ass'n*, 216 Ariz. 195, ¶¶ 24-27, 165 P.3d at 179-80, in which this court adopted the Restatement's approach in evaluating the discretionary decisions of a common-interest community association. Although we may follow the Restatement in the absence of controlling authority, our case law provides the test for determining contract unconscionability; therefore, we need not look to the Restatement to address this question. *Id.*, ¶ 24; *Nelson*, 198 Ariz. 563, ¶¶ 13-15, 12 P.3d at 242-43 (adopting *Maxwell* unconscionability test outside context of Uniform Commercial Code).

the plaintiffs' application for a preliminary injunction, the trial court found the MDR and agreements enforceable as equitable servitudes. Consequently, when the court ruled on the plaintiffs' cross-motion for summary judgment, it rejected the unconscionability arguments, stating, the "[p]laintiffs' arguments amount to a collateral attack on the [preliminary-injunction] Ruling" and the "plaintiffs [did not object] at any time to being bound by the law of the case." Because, as noted earlier, the law-of-the-case doctrine was inapplicable, and unconscionability is a potential basis for voiding contractual servitudes, *see Maxwell*, 184 Ariz. at 89-91, 907 P.2d at 58-60, we address the issue.

¶21 "Procedural or process unconscionability is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Maxwell*, 184 Ariz. at 88-89, 907 P.2d at 57-58, *quoting* 2 Dan B. Dobbs, *Law of Remedies* § 10.7, at 706 (2d ed. 1993). Additionally, the ability of a party to alter the printed terms of a contract is a relevant factor in determining procedural unconscionability. *See id.* at 89, 907 P.2d at 58. The plaintiffs contend the MDR is procedurally unconscionable because the burden placed on real property, including payment of the new-member fee, "provides no benefit to subsequent property owners." But that argument relates more to substantive unconscionability, which we discuss below, because it focuses on the terms of the contract, not the parties' bargaining posture or process. *See Nelson*, 198 Ariz. 563, ¶ 14, 12 P.3d at 242-43.

19

¶22 The plaintiffs point to no evidence, and we see none in the record, of unfair surprise or any other defects in the bargaining process at the time these contracts were created through the agreements or the imposition of the covenants referring to GVR or its predecessors. All plaintiffs save one have one or more documents imposing mandatory GVR membership recorded against their properties. *See supra* notes 1, 6. The plaintiffs thus had notice such an agreement exists, and constructive notice of the terms of the contracts, as reflected in the publicly recorded documents. Moreover, although the plaintiffs claim there was a disparity in bargaining power between the "elderly" homeowner plaintiffs "on fixed incomes," and GVR, with its purported corporate wealth and resources, they provide no factual support from the record for their contention or to show that any such disparity had any effect on the bargaining process. *See Maxwell*, 184 Ariz. at 89, 907 P.2d at 58 (procedural unconscionability examines factors such as "'age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question'" to determine whether there was real and voluntary meeting of minds), *quoting Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D. Mich. 1976); *see also Phx. Baptist Hosp.*, 179 Ariz. at 292-94, 877 P.2d at 1348-50 (trier of fact could find financial agreement procedurally unconscionable where signer executed document without his reading glasses, without explanation of documents, and while his wife suffered heart attack in emergency room); *cf. In re Marriage of Pownall*,

20

197 Ariz. 577, ¶¶ 6-13, 5 P.3d 911, 914-15 (App. 2000) (premarital agreement not procedurally unconscionable when wife knew purpose of agreement, was offered counsel, had opportunity to obtain business valuation of husband's assets, and no evidence wife compelled to sign agreement).[10] Even viewing the record in the light most favorable to the plaintiffs, who have not identified any disputed material facts in this regard, we cannot find the contracts procedurally unconscionable as a matter of law.

¶23 The plaintiffs also claim the contracts were substantively unconscionable, pointing to GVR's "unlimited resources and the power and ability to control and dictate unfair contractual terms," and the "unlimited right to tax a home sale" via the new-member fee. To evaluate substantive unconscionability, we examine the relative fairness of the obligations assumed by the parties, including whether the "contract terms [are] so one-sided as to oppress or unfairly surprise an innocent party," whether there exists "an overall imbalance in the obligations and rights imposed by the bargain," and whether there is a "significant cost-price disparity." *Maxwell*, 184 Ariz. at 89, 907 P.2d at 58.

¶24 In exchange for membership in GVR, the plaintiffs agreed to permanently encumber their real property and pay annual membership dues at a rate set by the board of directors. There is no evidence in the record comparing the cost of GVR membership

---

[10]The plaintiffs further argue GVR membership would have a negative impact on a hypothetical sale of real property; however, procedural unconscionability is strictly a legal determination, not a decision made by weighing unsupported factual allegations. *U.S. Fid. & Guar. Corp. v. Advance Roofing & Supply Co.*, 163 Ariz. 476, 481, 788 P.2d 1227, 1232 (App. 1989).

to the cost of other similar recreational memberships, or any evidence suggesting a significant cost-price disparity inherent in these contracts.

¶25 The plaintiffs also allege the servitudes are substantively unconscionable because GVR has the right to unilaterally modify the rights and responsibilities of the parties, which includes the unfettered right to increase fees or terminate the contracts, whereas the plaintiffs and any successors in interest are bound to the agreement "in perpetuity." In evaluating this claim, we consider all parts of the contract together. *See Mountain View Condos. Homeowners Ass'n, Inc. v. Scott*, 180 Ariz. 216, 219, 883 P.2d 453, 456 (App. 1994).

¶26 As noted earlier in this decision, the MDR obligates GVR members to pay dues and assessments established by GVR. GVR's articles of incorporation and bylaws provide that GVR, in the sole discretion of the board of directors, is authorized to "solicit, collect, and receive" funds to effectively further the purpose of GVR, by serving the recreational needs of members and the Green Valley community, operating and maintaining recreational and social facilities, and sponsoring cultural and civic activities. GVR acknowledges it has a unilateral right to amend the MDR based on a majority vote of the board.

¶27 GVR points out, however, that its authority is tempered by its articles and bylaws, which set forth rights, including voting rights, of all members who are in good

22

standing.[11]  Indeed, a corporation only has powers as conferred by its charter, and the charter is organized under the statutes and laws by which it is governed.  *Trico Elec. Coop. v. Ralston*, 67 Ariz. 358, 366, 196 P.2d 470, 475 (1948); *see also Rowland v. Union Hills Country Club*, 157 Ariz. 301, 304, 757 P.2d 105, 108 (App. 1988) (rights of members of private organization governed by articles of incorporation and bylaws, which constitute contract between members and organization); Restatement § 6.7 (common-interest community's power to adopt rules governing use of common property limited by statute or governing documents).  And GVR members may choose to modify or extinguish deed restrictions and membership requirements through the election of board members or otherwise following procedures as outlined in the bylaws.  *See Shamrock v. Wagon Wheel Park Homeowners Ass'n*, 206 Ariz. 42, ¶¶ 15-16, 75 P.3d 132, 136 (App. 2003); Bylaws art. II, § 6.

¶28        Furthermore, a corporation may not amend its declarations in a manner that would unreasonably alter the nature of the covenants.  *See Dreamland Villa Cmty. Club Inc. v. Raimey*, 224 Ariz. 42, ¶ 38, 226 P.3d 411, 420 (App. 2010).  Thus, contrary to the

---

[11]The plaintiffs assert that GVR admitted in an August 24, 2010, letter to all members that the bylaw amendments of 2000 are void because they did not pass by a two-thirds majority vote and, consequently, the only GVR members now subject to the new-member fee are those whose properties are bound by the MDR.  In its ruling on the motions for summary judgment, the trial court did not specify which bylaws were applied, and the court later denied the plaintiffs' motion to reconsider the issue as moot because the judgment already had been entered.  In any event, evaluating the terms of the contracts as set forth in the 1999 bylaws would not change our analysis because Article VI, § 1 authorized the board of directors to "establish initial fees, dues, [and] assessments [and] to collect all dues and assessment[s]."

plaintiffs' contention, GVR does not have the unfettered ability to modify the rights of the parties, and the plaintiffs may exercise their voting rights to influence GVR's actions, notwithstanding their assertions that they have minority status and "insufficient voting power." *See Shamrock*, 206 Ariz. 42, ¶¶ 15-16, 75 P.3d at 136 (when homeowner takes deed containing restriction allowing amendment by majority vote, homeowner implicitly consents to any subsequent majority vote to modify or extinguish deed restrictions).[12] Based on the record before us, we cannot find as a matter of law that the contracts are substantively unconscionable.

Illusory/Unilateral Contract

¶29         In a related argument, the plaintiffs further contend the contracts are void as unilateral or illusory because they contain a "secret unilateral right to change the contract" at will, citing *Gates v. Ariz. Brewing Co.*, 54 Ariz. 266, 272, 274, 95 P.2d 49, 51-52 (1939). First, there is nothing "secret" about GVR's duly recorded bylaws and the MDR. Second, although the plaintiffs rely on *Gates* for the general proposition that mutuality of obligation is required in order for a contract to be binding, *Gates* further

_____

[12]Those plaintiffs subject to the MDR further argue it could not be amended to add the new-member fee because the MDR is silent on amendment and the plaintiffs did not agree to its amendment. The plaintiffs offer no legal support for their contention that the contract between the parties is limited to the MDR itself, merely asserting "GVR has targeted those members who sell their home for a special tax," and if upheld, "HOA [(homeowner association)] after HOA will [follow suit] to feed [their] coffers on property sales[,] . . . [o]nce such a genie is out of the bottle." Absent any citations to authorities, statutes, or parts of the record relied upon, this claim is waived and we do not address it further. *See* Ariz. R. Civ. App. P. 13(a)(6); *Ritchie v. Krasner*, 221 Ariz. 288, ¶¶ 61-62, 211 P.3d 1272, 1289 (App. 2009).

24

holds that legitimate implications drawn from a contract are enough to overcome a mutuality challenge, and courts need not consider whether one party's obligations are as onerous as those undertaken by the other. *Id.* Mutuality of obligation is indeed an essential element of every enforceable agreement and is absent when only one of the contracting parties is bound to perform. *Carroll v. Lee*, 148 Ariz. 10, 13, 712 P.2d 923, 926 (1986). However, "a promise may be inferred wholly or partly from conduct and there is no distinction in the effect of the promise whether it is expressed in writing, or orally, or in acts, or partly in one of these ways and partly in others." *Id.*, *quoting Cook v. Cook*, 142 Ariz. 573, 576, 691 P.2d 664, 667 (1984) (citation omitted). A promise exchanged for a promise is sufficient; consideration need not be of like or identical value, and the court will not inquire into the adequacy of consideration. *Id.*

¶30　　　　Having already determined that GVR must perform for the benefit of its members under the restrictions of the articles of incorporation and bylaws, and without weighing the relative obligations of the parties, we conclude GVR has provided consideration under the contracts. Accordingly, they are neither unilateral nor illusory.

### Cross-Appeal

¶31　　　　GVR cross-appeals from the trial court's denial of its application for attorney fees pursuant to A.R.S. § 12-341.01. We review the denial of attorney fees to a prevailing party in a contract action for an abuse of discretion. *Varsity Gold, Inc. v. Porzio*, 202 Ariz. 355, ¶ 28, 45 P.3d 352, 357 (App. 2002). We will uphold the court's

25

ruling "if it has any reasonable basis." *Uyleman v. D.S. Rentco*, 194 Ariz. 300, 305, 981 P.2d 1081, 1086 (App. 1999).

¶32 Although GVR prevailed on all claims, the trial court made a number of findings in determining whether to award fees, including that the plaintiffs had brought novel claims "with the appearance of merit" and that litigation was unlikely to have been settled or avoided by alternative dispute-resolution processes. The court also determined that "given the close nature of this case" and the "unusual nature" of the servitudes, "imposition of fees would have a chilling effect on future litigation to determine rights as to servitudes." Because the court articulated a reasonable basis for denying the request for attorney fees, and we cannot say it abused its discretion, we deny the cross-appeal. *See Uyleman*, 194 Ariz. at 305, 981 P.2d at 1086.

**Attorney Fees On Appeal**

¶33 Both parties seek attorney fees on appeal. In a contested action arising out of a contract, we may award the successful party reasonable attorney fees. *See* § 12-341.01(A); *see also Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz 482, ¶¶ 34-39, 167 P.3d 1277, 1285-86 (App. 2007) (claims concerning servitudes arise out of contract for purposes of § 12-341.01). Accordingly, we award GVR, as the prevailing party on most of the contested issues on appeal, its reasonable attorney fees upon compliance with Rule 21, Ariz. R. Civ. App. P., and deny the plaintiffs' request. *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (App. 1983)

(where party has accomplished result sought in litigation, fees may be awarded for time spent even on unsuccessful theories).

**Disposition**

¶34      For the foregoing reasons, the trial court's grant of summary judgment in favor of GVR and its denial of GVR's application for attorney fees are affirmed.

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge